BUSBY SCHOOL OF the NORTHERN
CHEYENNE TRIBE, et al.

v.

The UNITED STATES.

No. 221–85L.

United States Claims Court.

July 25, 1985.

Michael P. Gross, Santa Fe, N.M., for plaintiff. Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, N.M., and Charles A. Hobbs, Hobbs, Straus, Dean & Wilder, Washington, D.C., of counsel.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

## OPINION

LYDON, Judge.

In this Indian case, plaintiffs seek leave to file a motion for a preliminary injunction.[1] Defendant failed to respond to this

---

1. One plaintiff in this case is the School Board of Busby, Montana which is operated by trustees elected by members of the Northern Cheyenne Indian Tribe. Other plaintiffs are certain enrolled members of the Tribe and their minor children. As part of their complaint, plaintiffs have moved to certify their suit as appropriate for class action status. There is presently pending before the court defendant's motion to dismiss plaintiffs' complaint, as amended, and its opposition to plaintiffs' class action request. In their complaint, as amended, plaintiffs seek damages for defendant's breach of certain contracts the School Board of Busby claims it had

motion for leave to file within the time period provided by the RUSCC and the court therefore grants plaintiffs' motion. Having allowed plaintiffs to file their motion for a preliminary injunction, the court, upon careful consideration of the extensive documentation submitted by plaintiffs in support of said motion, and without a response from defendant and without oral argument, concludes that plaintiffs' motion for a preliminary injunction must be denied as requesting relief beyond the jurisdiction of the court.

In their motion for a preliminary injunction, plaintiffs seek the following "equitable" relief under 28 U.S.C. § 1491(a)(3):

[A] preliminary declaration of rights and an injunction ordering the defendant to forthwith make available from the FY [fiscal year] 1985 Interior Department, Bureau of Indian Affairs [BIA] Facilities Improvement and Repair (FI&R) appropriation, Pub.L. No. 98–473, or such other funds as may be available, $400,000 to accomplish necessary minimum repairs and renovation of the Busby high school facility, presently inoperable, in time to allow the resumption of a high school program for grades 10, 11 and 12 in said facility in the fall of 1985 as required and contemplated by the parties' contract No. 50–C–1420–5510, or in the alternative to direct the said Defendant to make immediate other provision for the education of Busby area high school-aged students presently without opportunity for a high school education in breach of defendant's contractual and legal duties to them.

In stating the relief sought by plaintiffs, *supra*, it is apparent and clear that this court, under 28 U.S.C. § 1491(a)(3), is without jurisdiction to grant such relief.

## I.

In early 1970, the policy of the Federal Government was declared to be a promotion of Indian self-determination. One arm of this policy was to provide for locally controlled Indian schools in each Indian community which desired one. So it was that the Northern Cheyenne Tribal Council authorized the creation of a tribally-elected School Board for the community of Busby on the Northern Cheyenne Indian Reservation. The Council authorized the School Board to negotiate with BIA relative to turning over the legal control of the education program at the Busby school to the plaintiff School Board. The statutory authority for the School Board and the BIA to enter into agreements can be found in 25 U.S.C. § 450b(c) (1976).

The School Board and the BIA entered into the first agreement or contract in 1972. At that time, the Busby school facilities were in a serious state of disrepair. Because the School Board refused to accept the contractual obligation for the operations and maintenance of the school facilities, the BIA assumed those obligations. The first contract entered into between the School Board and the BIA in 1972 provided, in pertinent part, that with respect to school operating facilities, "[a]ny capital improvements, repairs and maintenance will be the responsibility of the Government (Bureau), [unless the Contractor (School Board) requests and receives approval for permission to perform some of these functions from funds provided in the contract.]." The bracketed portion, *supra*, was utilized in the agreements entered into by the School Board and BIA subsequent to the initial 1972 contract.

Plaintiffs allege, and the rather voluminous attachments in support of plaintiffs' motion seem to support the allegations, that defendant since 1972 has continuously failed to meet its obligations regarding "improvements, repairs and maintenance" of the Busby school facilities, despite con-

---

with defendant to repair and maintain certain reservation facilities used for school purposes. These school facilities, plaintiffs allege, have been closed due to their state of disrepair. In their complaint, as amended, plaintiffs also seek equitable relief by declaratory judgment as well as by injunctive order from the court. The relief sought by preliminary injunction herein is within the pale of the equitable relief plaintiffs seek in their amended complaint.

tinued requests from the plaintiff School Board to do so.[2]

In 1982, because of the decaying condition of the high school facilities, the School Board moved the high school operation into the elementary school building for the 1982–1983 school year. A 1983 survey by the Department of Health and Human Services (Federal Government) found many deficiencies, which existed in 1982, in the high school facilities and recommended that the facility be closed.

In the early part of 1983, the BIA did set aside some FI&R money for improvements at the Busby elementary school but provided no money for like work on the high school facility. The resulting construction work on the elementary school facility made it most difficult to combine the high school operation and the elementary school operation in the same facility for the 1983–1984 school year.

In March 1983, the State of Montana Office of Public Instruction granted Busby high school accreditation on probation, citing "major deviations in all of the 500 series." The "500 series" was that portion of the evaluation process which dealt with the acceptability of the school plant and facilities.

In June 1983, the School Board, given the Montana probation report and the construction work which impeded the combining of the high school and elementary school operations in one facility, passed a resolution suspending the normal academic and extra-curricular functions of the high school until such time as the high school facilities were upgraded to meet basic minimum health and safety standards, and services or funds became available for maintaining and protecting the facilities once they met those standards, and funds became available for hiring and maintaining a staff to meet minimum academic requirements.

The suspension of high school functions by the School Board, plaintiffs stress, meant, in essence, that all Busby Indian high school-aged children and one-half of all other children on the Northern Cheyenne Reservation were, and presently are, without means to obtain a high school education. Alternative high schools outside the Busby area are not, because of distance, weather, road factors, etc., plaintiffs argue, reasonable alternatives.

In the summer of 1983, the plaintiff School Board decided to contract for the operations and maintenance aspect of the Busby high school program. An engineering firm was retained to inspect the high school and to ascertain the cost necessary to bring the high school within proper facility guidelines. A cost estimate of $1,182,-000 was obtained as a result of this survey.

Effective January 8, 1984, a new agreement (No. 5592) for the operation and maintenance of school facilities was entered into between the School Board and BIA. With respect to the high school facility, this contract provided in pertinent part:

[T]he BIA Billings Area Office pledges to use its best efforts to secure necessary FI&R or any other funds which may be available to provide for such repairs so as to permit the reopening of these facilities.

Plaintiffs allege BIA made no effort to secure such funds.

In the fall of 1984, when the ninth grade (first year of high school) resumed operating in the elementary school facility, the School Board decided it would resume grades 10–12 in the fall of 1985. The School Board also filed a contract dispute with the BIA on August 8, 1984, the status of which is unclear. The Tribal Council supported the School Board in these endeavors.

On November 30, 1984, the School Board notified the BIA of its intent to reopen its high school facilities for the 1985–1986 school year. In doing so, the School Board stressed that this was not a new school

---

**2.** Plaintiffs also contend that defendant's failure to maintain the Busby school facilities violates statutory (25 U.S.C. § 2005 (1982)) and regulatory obligations (25 C.F.R. § 32.4(s)(2)). The contracts between BIA and the plaintiff School Board required the school facilities to meet state standards for an educational institution.

request but was simply an intent to resume operations in facilities which had existed for decades. On January 9, 1985, BIA denied the request to reopen the high school on the ground proper facilities to conduct classes for grades 10–12 did not exist on the reservation. Plaintiffs appealed the denial. As part of its appeal, the School Board retained the same engineering firm that had previously surveyed the high school facilities. In a February 8, 1985, report, the firm estimated that $400,-000 would be required to minimally ready the high school facilities for the fall of 1985, with 120 days necessary to complete the work.

Plaintiffs' appeal was looked on favorably by one BIA official, but subsequently a superior official rescinded this favorable action on the ground that there was no funding available for resumption of grades 10–12 at Busby contrary to the statement of the lower BIA official. The School Board has appealed this denial to resume grades 10–12 at Busby high school.

Sometime in February or March 1985, the School Board submitted a request for emergency FI&R funds of $400,000 to repair the high school facilities. Plaintiff also filed a letter of intent to apply for a contract for these funds to renovate the high school pursuant to 25 U.S.C. § 450f(a) (1982). The School Board submitted a formal application to BIA for a contract to acquire funds to repair the high school under 25 C.F.R. Part 271 (1984). The requested FI&R funds were to come from a congressionally appropriated fund of $40 million to the BIA for fiscal year 1985. These funds were not appropriated for specific projects but were made available to the BIA for expenditure on the basis of prioritized projects. The request for emergency funds was presumably denied along with plaintiffs' appeal mentioned earlier. Plaintiffs charge that this denial was wrongful.

There is no indication that any action has been taken by BIA on the School Board's appeal of its request to resume high school operations in the high school facilities on the reservation or the School Board's application for a contract to acquire $400,000 for remedial work on the high school facility. Plaintiffs expect that both its appeal and application will be denied. Plaintiffs now want the court to direct and order BIA to make said funds available immediately to the School Board, or, alternatively direct the BIA to make other provisions for the education of Busby area high school-aged children.

II.

In considering plaintiffs' motion for a preliminary injunction, the primary focus must be whether this court has the authority to grant the equitable relief requested by plaintiffs.

■■■ This court like its predecessor, the Court of Claims, is a court of limited jurisdiction. Its jurisdiction to grant relief depends on the extent to which the United States has waived its sovereign immunity to suit. It is well established that waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Accordingly, any jurisdiction granted to this court by Congress must be strictly construed. *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed.Cir.1982). As the Federal Circuit Court of Appeals observed in pertinent part in *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.1983), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103: "In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress."

In this case, plaintiffs contend that 28 U.S.C. § 1491(a)(3) gives this court jurisdiction over the equitable relief plaintiffs are seeking. Section 1491(a)(3) states in pertinent part:

To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judg-

ments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

The School Board's primary contention is that it applied to contract under 25 U.S.C. § 450f and 25 C.F.R. § 271 for FI&R funds to complete sufficient repairs on the Busby high school facility to permit the resumption of grades 10–12 for the 1985–1986 school year. This application to contract occurred either on March 19, 1985, when the School Board submitted a letter of intent to apply for a contract, or on May 29, 1985, when the School Board filed an actual formal application to contract. Plaintiffs maintain that this contract has yet to be awarded and thus, given the plain language of section 1491(a)(3), this court has jurisdiction to grant plaintiffs' requested injunctive relief.

■ Construing section 1491(a)(3) strictly, as this court must do, the court does not agree with plaintiffs' broad "plain language" reading of this court's equitable jurisdiction. A review of the legislative history of section 1491(a)(3) indicates the limited breadth of that provision as intended by Congress. The legislative history states in pertinent part:

> Since the funds which the Government utilizes to purchase goods and services are derived solely from public sources, the public has strong interest in the ability of the Government to fulfill its requirements in these areas at the lowest possible cost. Accordingly, in the very vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner. Yet, at the same time the Government must respect the rule of law. If it deviates from that norm it must be accountable for its actions in the courts, which are equipped with certain powers to redress proven wrongs. Hopefully, by modestly increasing the powers of the Claims Court, the needs of a cost-effective government contract system and of a lawful government contract system will both be met.

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Moreover, the Committee expects that the court will utilize the authority conferred upon it by this section only in truly extraordinary circumstances, as is required for the granting of equitable relief in all cases. The Committee intends the court to take great care not delay or prevent the award of contracts for goods or services which relate to the national defense and security. [H.R.Rep. No. 312, 97th Cong., 1st Sess. 43–44 (1981)]

This history, cited by plaintiffs, clearly indicates that Congress intended that this court only have equitable jurisdiction in a pre-award contractual situation involving the procurement process. Congress did not intend to grant this court injunctive authority over all matters involving the government which can be characterized as contractual in nature.

■ This case does not involve the procurement process. Instead, this case deals with congressionally created "contracts" designed to promote Indian self-determination. *See* 25 U.S.C. §§ 450, 450f, 450h. The interests expressed in the above cited legislative history regarding the promotion of a cost-effective but yet lawful government contract system would not be served by granting the equitable relief requested by plaintiffs in this case.

■ Furthermore, this court and its predecessor have established that in order to grant pre-award relief, an implied contract to fairly and honestly consider plaintiff's proposal must exist. *See Western Pioneer, Inc. v. United States*, 8 Cl.Ct. 291, 297 (1985) (citing *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 414 (1956)). Such a pre-award contract claim must at least involve a contract implied-in-fact which requires an offer and acceptance. *Western Pioneer, Inc. v. United States, supra,* at 297. This court in *Western Pioneer, Inc.* stated:

A contract proposal not previously requested by the government cannot fulfill the offer and acceptance requirement such as to create a "contract" requiring fair and honest consideration. Thus, to have an implied contract of fair and honest consideration requires that there initially be a request by the government for a contractual proposal. It is this request which carries the implied condition of fair and honest consideration. An unsolicited proposal submitted to the government could not produce the required implied "contract." [*Id.*].

■ In this case it is clear that the School Board's application to contract was not solicited by the government.[3] Therefore, there was no implied contract of fair and honest consideration necessary to confer injunction authority jurisdiction on this court. *See United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir. 1983); *Harris Systems Internat'l, Inc. v. United States*, 5 Cl.Ct. 253, 260–62 (1984). *See also Golden Eagle Refining Co. v. United States*, 4 Cl.Ct. 613, 618–20 (1984); *Eagle Constr. Corp. v. United States*, 4 Cl.Ct. 470, 480–81 (1984).

■ In addition, the relief that plaintiffs are seeking in this case is essentially a request that the court order defendant to award a contract to plaintiffs and set aside funds to renovate the Busby high school. It is well established that this court lacks jurisdiction to order the government to award a contract to anyone. *See Caddell*

*Constr. Co. v. United States*, 7 Cl.Ct. 236 (1985). The only power this court has is the authority to enjoin defendant from awarding the contract to anyone but a plaintiff contractor. *Id.* Such relief, assuming the court did have equitable jurisdiction in this case, would not alter plaintiffs' current position.[4]

■ Plaintiffs urge the court to make an exception in this "unique Congressionally-mandated, sole-source negotiated contract situation" (Plf's Memorandum p. 5) and exercise its equitable authority to award the contract in question. This court has stated, however, that it is a court of limited jurisdiction. Absent a waiver by the United States of its sovereign immunity, this court is without authority to render judgment against defendant. Despite the apparent equities which may favor plaintiffs in this case, a waiver of sovereign immunity cannot be implied. *United States v. King, supra*, 395 U.S. at 5, 89 S.Ct. at 1503. In strictly construing the court's grant of authority, it cannot act beyond its power whenever the equities in a case favor one party over the other.

Plaintiffs also argue that the court has pre-award contractual equitable authority in this case based on the contemplated but not yet awarded contract between the School Board and defendant for the operation of grades K–12 in the Busby school system during fiscal years 1986–1988. The School Board contends that if it is unable to renovate the high school and resume

---

3. It is certainly arguable that the School Board's application for a contract in this case is more in the nature of a request for a grant than a contractual proposal. Section 450h of title 25 may actually apply in this case indicating that what plaintiffs are seeking is, in reality, a grant of $400,000 from defendant to renovate its school. The court recognizes that 25 U.S.C. § 450f speaks in terms of contracts, but the character of the School Board's application is similar to a grant request which would place this case totally outside the pale of 28 U.S.C. § 1491(a)(3) and this court's limited equitable authority. The court notes that plaintiffs' motion for a preliminary injunction requests that the court order defendant to make $400,000 available to the School Board for the needed school renovation. Such relief is in the nature of a request for a

grant and not the award of a contract. Further, the regulations (25 C.F.R. § 271.1 (1984)) point out that only non-profit contracts with Indians are involved and not the general procurement type contract to which 28 U.S.C. § 1491(a)(3) is directed.

4. Plaintiffs' motion for a preliminary injunction requests, in the alternative, that the court direct defendant to provide an immediate alternative means of educating the high school-aged children currently without a school. Again, this court has limited jurisdiction. This court's injunctive authority is set out in 28 U.S.C. § 1491(a)(3). Such authority does not include the power to direct defendant to provide the educational services requested by plaintiffs.

operating grades 10–12 it is likely that defendant will seek to eliminate those grades from the School Board's service contract. The elimination of those grade levels would impact on any potential future contract to operate the Busby school and thus is a pre-award matter over which this court has injunctive authority.

Plaintiffs' argument regarding present governmental actions potentially affecting a contract which may be awarded in the future stretches the perception of this court's equitable jurisdiction beyond plaintiffs' prior contract argument. There is no semblance of an offer and acceptance to give rise to an implied-in-fact contract of fair and honest consideration. Defendant has neither solicited for proposals to operate the Busby school system nor has the School Board apparently applied for such a contract. This "prospective" contract argument manufactured to establish this court's equitable authority over this matter must be rejected as the court rejected plaintiffs' other contractual theory to place their claim within the pale of section 1491(a)(3) equitable jurisdiction.[5] If one were to take the plaintiffs' second "prospective" contractual theory to its logical conclusion, in any situation in which a contractor had entered into a continuous series of similar contracts with the government, the contractor could seek equitable relief in this court under section 1491(a)(3) anytime governmental actions might prejudice a part of a future contract with that contractor. Such a reading of section 1491(a)(3) clearly does not strictly construe that provision and it implies a waiver of sovereign immunity when an express waiver is required. *See Fidelity Constr. Co. v. United States, supra,* 700 F.2d at 1387.

Therefore, the court concludes that the equitable relief requested by plaintiffs is beyond the jurisdiction of this court. As a result its motion for a preliminary injunction must be denied.

Plaintiffs' alternative request to transfer their case to a district court is likewise denied. Whether a case should be transferred to a district court lies within the sound discretion of the court. *See Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985); *Patterson v. United States,* 230 Ct.Cl. 932, 934 (1982). The basic test, set forth in 28 U.S.C. § 1631 (1982) for determining if a case should be transferred is whether it would be in "the interest of justice" to do so. *Goewey v. United States,* 222 Ct.Cl. 104, 108, 612 F.2d 539, 541 (1979). In this case, the facts persuade the court that it would not, in any event, be in "the interest of justice" to transfer plaintiffs' motion for a preliminary injunction to a district court.

There are several factors which weigh against transfer. First, it is not clear to the court whether the district court would have equitable jurisdiction over a claim which may be premature. Defendant has not at this time denied the School Board's contract application, and if it does, 25 U.S.C. § 450f(b) provides a procedure for appealing that refusal. Until plaintiffs' administrative remedies are exhausted its claim for equitable relief may not be ripe for judicial intervention. *See McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Otter Creek Coal Co. v. United States,* 224 Ct.Cl. 697 (1980). Second, the ambiguous nature of plaintiffs' request for equitable relief makes it unclear whether any court at this time has jurisdiction over the claim. Third, plaintiffs' present request for injunctive relief is entirely intertwined with their claims in its underlying complaint. It would be contrary to "the interest of jus-

---

**5.** Plaintiffs appear to implicitly claim that defendant's failure to provide the necessary funds for the renovation of the Busby high school constitutes a violation of an existing contract which entitles it to injunctive relief. If plaintiffs are indeed making such a claim, it is without merit. It is well established that this court's equitable jurisdiction in contract actions can only be exercised prior to award of the contract. *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1372 (1983). Actions brought based on breaches of existing or past contracts are post-award and outside the pale of the equitable jurisdiction of this court. *See* 28 U.S.C. § 1491(a)(3).

tice" to sever off plaintiffs' claim for equitable relief which is so interwoven into the underlying complaint and have another court render a decision on that part of the case. Finally, plaintiffs' request for equitable relief is based on 28 U.S.C. § 1491(a)(3), a provision applicable only to actions filed in this court. Said provision would not be applicable to any action filed or transferred to a district court.[6] Based on all of these factors, transfer of this case to a district court would not be appropriate under these circumstances.

### III.

Based on the above discussion, plaintiffs' motion for a preliminary injunction is denied as is plaintiffs' alternative request to transfer this case to a district court.

---

6. It is interesting to note that plaintiffs, in their opposition brief to defendant's motion to dismiss their complaint, as amended, state: "[M]oreover, no United States district court would have jurisdiction to award declaratory and injunctive relief of the sort here sought [*i.e.*, relief under 28 U.S.C. § 1491(a)(3) ]," citing *Lee v. Thornton*, 420 U.S. 139, 140, 95 S.Ct. 853, 853, 43 L.Ed.2d 85 (1975); *Metadure Corp. v. United States*, 490 F.Supp. 1368, 1371 (S.D.N.Y.1980). (Plfs' Br. p. 3)