**Melvin Hugh HALL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–629 C.**

United States Court of Federal Claims.

Feb. 23, 2010.

Melvin Hugh Hall, Coleman, FL, pro se.

Jordan Cunningham, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court are plaintiff's application to proceed *in forma pauperis* and the government's motion to dismiss. In this case, *pro se* plaintiff Melvin Hugh Hall, an inmate at a high-security correctional facility in Coleman, Florida, alleges that he sustained "injuries against his rights" when individuals employed by the Federal Bureau of Prisons ("Bureau") confiscated documents he attempted to mail to the Superior Court of Liberty County in Hinesville, Georgia. Compl. 2–3. The government moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint for lack of subject matter jurisdiction, contending that plaintiff's claims sound in tort. Although the court afforded plaintiff ample opportunity—over two months—to respond to the government's motion, he did not do so, and the court determines that, given plaintiff's silence, there is no reason to delay its ruling. For the reasons discussed below, plaintiff's application to proceed *in forma pauperis* is granted and the government's motion is granted.

### I. BACKGROUND[1]

On November 24, 2008, plaintiff attempted to mail a "large brown envelpe [sic] containing Commercial U.C.C. Documents" to the Superior Court of Liberty County in Hinesville, Georgia. Compl. 3; *see also* Compl. Ex. E (explaining that the documents included a security agreement, a hold harmless agreement, a copyright notice, and a power of attorney); Compl. Exs. H–J (reproducing the first pages of these documents). Plaintiff alleges that he handed this envelope, together with a "Form 24" withdrawal slip in the amount of $50.50, to a Bureau employee. Compl. 3; *see also* Compl. Ex. C (containing a November 26, 2008 letter from plaintiff to Robin Bell, Deputy Clerk of the Superior Court of Liberty County, Georgia, indicating payment of $50.50 "to cover cost of recording"). Thereafter, on December 16, 2008, plaintiff claims that "court recording fees w[ere] taken from [his] inmate account via form 24." Compl. 3. According to plaintiff, his "Form 24" was voided on December 18, 2008, at which time his account reflected a credit of $50.50. *Id.* Plaintiff claims that his documents were not returned to him. *Id.*

---

1. The facts are derived from the complaint and exhibits appended thereto.

On January 5, 2009, plaintiff submitted an "Inmate Request to Staff" addressed to an employee in the Cashier's Office of the Bureau and requested information as to what happened to his documents. Compl. Ex. D. Plaintiff apparently learned on January 7, 2009, that his documents were turned over to Jeffrey Campbell, a supervisory attorney in the Bureau's regional office in Atlanta. Compl. 3. A handwritten explanation in the "disposition" portion of plaintiffs "Inmate Request to Staff" form indicates that plaintiff's "documents were forwarded to the U.S. Attorneys Office for your possible prosecution." Compl. Ex. D.

In a letter addressed to Mr. Campbell on January 12, 2009, plaintiff asserted that "these documents do not pertain to you nor the [Bureau] in any manner" and requested their return. Compl. Ex. E. On January 20, 2009, plaintiff submitted an "Inmate Request to Staff" form to Susan Church, a Bureau accounting supervisor, wherein plaintiff alleged that Mr. Campbell conspired, along with the Bureau's accounting office, to steal his documents and prevent their filing.[2] Compl. Ex. F at 1; see also id. at 2 (alleging a "conspiracy and theft of Commercial Instruments"). Maintaining that Mr. Campbell was involved in a criminal conspiracy to steal his documents "from a legal mail depository conduit and Obstruct the Registering thereof," plaintiff, on March 12, 2009, filed an administrative tort claim with the Office of Risk Management in Washington, DC. Compl. 4; see also Compl. Ex. L (containing a May 1, 2009 acknowledgment of receipt of plaintiff's administrative tort claim by the Bureau's regional office). In his administrative tort claim, plaintiff sought monetary damages in the amount of $10,000,000.00 for alleged personal injuries. Compl. Ex. M at 1.

In his complaint, plaintiff admonishes the Bureau for referring his administrative tort claim to Mr. Campbell, whom plaintiff claims "is a Criminal Defendant in this cause" and has been improperly tasked with investigating his own alleged criminal conduct. Compl. 4. On August 27, 2009, Mr. Campbell denied plaintiff's administrative tort claim, explaining, in part:

> As to your claim staff conspired to steal and take your "legal documents/commercial instruments to U.C.C. filings from a government designated mail depository," there is no evidence to support your claim. In this particular case, Business Office staff received your request for withdrawal of funds in the amount of $50.50, along with documents that appeared to be an attempt on your part to file commercial invoices and/or liens. The items were confiscated and the money returned to your account. However, upon completion of the investigation and a determination that you were not attempting to file a lien against a law enforcement officer, the items are now returned to you.[3]

Compl. Ex. M at 1–2 (footnote added). Plaintiff alleges that he received his documents on September 1, 2009. Compl. 4.

Plaintiff, who filed his complaint in the United States Court of Federal Claims ("Court of Federal Claims") on September 25, 2009, requests that the court prosecute Mr. Campbell and Ms. Church "for their criminal actions committed against" him. Id. at 6. Specifically, plaintiff alleges that these Bureau employees violated five sections of title 18 of the United States Code: sections 241 (conspiracy against rights), 242 (deprivation of rights under color of law), 1621 (perjury), 1703 (delay or destruction of mail), and 1708 (theft or receipt of stolen mail). Id. He seeks money damages in the amount of $46,000.00. Id.

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

Plaintiff submitted an application to proceed in forma pauperis. Congress enacted the Prison Litigation Reform Act of 1995

---

2. The "Inmate Request to Staff" incorrectly states the date as January 20, 2008. See Compl. Ex. F.

3. Mr. Campbell advised plaintiff that he had six months within which to institute a lawsuit in the appropriate federal district court in the event that he was dissatisfied with the Bureau's determination denying his administrative tort claim. Compl. Ex. M at 2.

("PLRA"), Pub.L. No. 104–134, 110 Stat. 1326 (1996) (codified in relevant part at 28 U.S.C. § 1915 (2006)), in order "to curtail inmate litigation," *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275 (6th Cir.1997), *superseded by rule on other grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). Section 1915 provides, in part:

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.[4] Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
>
> (2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal obtained from the appropriate official of each prison at which the prisoner is or was confined.[5]

28 U.S.C. § 1915(a)(1)-(2) (footnote added). Section 1915(b) addresses requirements for prisoners bringing a civil action or filing an appeal and contains mandatory language requiring the payment of filing fees:

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, *the prisoner shall be required to pay the full amount of a filing fee.* The court *shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee* of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account; or
> >
> > (B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the *prisoner shall be required to make monthly payments* of 20 percent of the preceding month's income credited to the prisoner's account.

*Id.* § 1915(b)(1)-(2) (emphasis added). Thus, "[i]f a prisoner cannot pay the filing fee immediately upon submission of the complaint," partial payment is permitted "with required subsequent installment payments made from the prisoner's account established with his or her custodian." *Brown v. United States*, 88 Fed.Cl. 795, 798 (2009). Furthermore, notwithstanding any filing fee, or portion thereof, that may have been paid, the court must dismiss a case at any time if it determines that (1) an allegation of poverty is untrue, (2) the action is frivolous or malicious, (3) the action fails to state a claim on which relief may be granted, or (4) the action seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

---

**4.** While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis. See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

**5.** The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," which

"raises the issue of whether it applies to both prisoners and non-prisoners." *Hayes v. United States*, 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.* at 367. In *Floyd,* the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") analyzed the PLRA's legislative history, explaining that the PLRA "was applicable only to prisoners" and that Congress "did not intend to prevent a non-prisoner from being able to proceed in forma pauperis in federal court." 105 F.3d at 276.

By enacting section 1915, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Brown v. United States*, 88 Fed.Cl. 322, 330 (2009) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). As the Sixth Circuit noted, the "emphasis of the [PLRA] is prison litigation, not pauper litigation." *Floyd*, 105 F.3d at 275. It further explained:

> [N]owhere in the legislative history of the PLRA is there a modicum of evidence that Congress intended to prevent indigent non-prisoners from proceeding in forma pauperis in the federal courts. To the contrary, *the legislation was enacted to require only prisoners to pay the entire sum of their fees and costs.* Congress expressly wanted to prevent "convicted criminals" from getting "preferential treatment" and to force prisoners to face the same "economic downside" as the "average law-abiding" citizen.

*Id.* at 276 (emphasis added) (citation omitted). Accordingly, section 1915(b)

> is restrictive and requires that *only a prisoner pay the full filing fees.* No mention of other individuals is made in this paragraph. Thus, *the provision segregates prisoner litigation from legal actions brought by non-inmate indigent litigants.* Given the several specific provisions in [section] 1915 that explicitly impose additional filing and financial burdens solely on

prisoners, the only logical interpretation of the statute is that non-prisoners have the option to proceed in forma pauperis under [section] 1915(a).

*Id.* (emphasis added). The requirements of section 1915(b) are reflected in the "Supplemental *In Forma Pauperis* Form For Prisoners" utilized, for example, by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), which instructs a prisoner to acknowledge and consent to withdrawal of funds from the prisoner's trust account in order to pay the appellate filing fee in its entirety.[6]

■ In his application to proceed *in forma pauperis*, plaintiff indicates, under penalty of perjury, that he has no income or property of value and that the only cash he possesses is deposited in his inmate account. Plaintiff did not indicate the date of last employment and the amount of his salary and monthly wages, as required in the application. *See* Pl.'s Application Proceed *In Forma Pauperis* 1. He also represents that he received no monies from any source within the past twelve months, *see id.* (representing that plaintiff received no monies from any business; rent payments, interest, or dividends; pensions, annuities, or life insurance payments; gifts or inheritances; or "[a]ny other sources"), and appended an "Inmate Statement" to his application to proceed *in forma pauperis*.[7]

Whether the court grants or denies plaintiff's application to proceed *in forma pauperis* is immaterial for purposes of section

---

6. Specifically, the form requires that the prisoner request and authorize the agency holding the prisoner in custody to furnish a certified copy of the statement of the prisoner's trust fund account or institutional equivalent for the past six months, as well as

> to calculate and disburse funds from my trust fund account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with an appeal, and I understand that the total appellate filing fees for which I am obligated are $450 or $455. I also understand that these fees will be debited from my account regardless of the outcome of my appeal. This authorization shall apply to any other agency into whose custody I may be transferred.

Form 6A, "Supplemental in Forma Pauperis Form for Prisoners," *available at* http://www.cafc.uscourts.gov/contents.html (last visited Feb.

23, 2010). The United States Court of Appeals for the Eleventh Circuit requires that prisoners furnish "a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts." "Motion and Affidavit for Permission to Appeal In Forma Pauperis," *available at* http://www.ca11.uscourts.gov/documents/index.php (last visited Feb. 23, 2010).

7. The "Inmate Statement," which lists transactions for the period beginning March 5, 2009, and ending November 6, 2009, appears to have been printed from an Internet website. Although the "Inmate Statement" is not certified, the court is satisfied that this submission complies with the statutory requirement as an institutional equivalent. *See* 28 U.S.C. § 1915(a)(2).

1915(b)(1), which, as discussed above, "provides that a court must ultimately collect a full filing fee from a prisoner, and, where possible, must collect an initial portion of the fee up front." *Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir.2009). The "procedures by which a prisoner shall make monthly payments against the balance of the fee," *id.*, are set forth in section 1915(b)(2), also discussed above. Therefore, while the court grants plaintiff's application to proceed *in forma pauperis*, plaintiff shall be assessed, pursuant to section 1915(b)(1), an initial partial filing fee comprising twenty percent of the greater of (1) the average monthly deposits into his account, or (2) the amount representing the average monthly balance in plaintiff's account for the six-month period immediately preceding the filing of his complaint. Thereafter, plaintiff shall be required to make monthly payments of twenty percent of the preceding month's income credited to his account. The agency having custody of plaintiff's account shall forward payments from plaintiff's account to the Clerk of Court each time the account balance exceeds $10.00 and until such time as the filing fee is paid in full.

## III. SCREENING OF PLAINTIFF'S COMPLAINT

Section 1915A of title 28 of the United States Code requires that the court screen a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must, upon review, identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1)-(2). Pursuant to section 1915A, the court has undertaken a screening review of plaintiff's complaint and dismisses the complaint because the allegations asserted therein are frivolous. Alternatively, for the reasons discussed in Part V, *infra*, the court must dismiss the complaint for lack of subject matter jurisdiction.

## IV. LEGAL STANDARDS

### A. *Pro Se* Plaintiff

The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States*, 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd*, 98 Fed. Appx. 860 (Fed.Cir.2004). As the court explained in *Demes v. United States*, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

### B. Motion to Dismiss—RCFC 12(b)(1)

Subject matter jurisdiction, which is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case," *Matthews*, 72 Fed.Cl. at 278, may be challenged at any time by the parties, by the court *sua sponte*, or on appeal, *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The court "consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *see also Henke v. United States*, 60 F.3d 795, 797

(Fed.Cir.1995) (recognizing the court's obligation to "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor"); *cf. Betz v. United States*, 40 Fed.Cl. 286, 290 (1998) (noting that the court is not required to accept plaintiff's framing of the complaint and that it should "look to plaintiff's factual allegations to ascertain the true nature of the claims").

■ A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748, and needs only set forth a *prima facie* showing of jurisdictional facts to survive a motion to dismiss, *Raymark Indus., Inc. v. United States*, 15 Cl.Ct. 334, 338 (1988). Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). However, where a defendant or the court challenges jurisdiction, "the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." *Murphy v. United States*, 69 Fed.Cl. 593, 600 (2006). The court may consider matters outside the pleadings when examining jurisdiction. *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed.Cir. 1993); *see also Reynolds*, 846 F.2d at 748 ("If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews*, 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## C. The Tucker Act

■ The Court of Federal Claims is a court of limited jurisdiction. *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *King*, 395 U.S. at 4, 89 S.Ct. 1501. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fid. Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King*, 395 U.S. at 4, 89 S.Ct. 1501. Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

■ The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc portion). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc). The court "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States*, 20 Cl.Ct. 132, 135 (1990).

## V. DISCUSSION

### A. The Court Lacks Jurisdiction Over the Complaint

The court notes that the only sources of law plaintiff cites in the complaint are federal criminal statutes. Plaintiff has not invoked Tucker Act jurisdiction, let alone identified a source of substantive law that creates a right to money damages or alleged the existence of an implied or express contract with the United States. Although the court construes *pro se* pleadings liberally, *see Haines*, 404 U.S. at 520, 92 S.Ct. 594, plaintiff is not relieved of his burden to establish that jurisdiction is proper in this court, *see Minehan*, 75 Fed.Cl. at 253. In light of his failure to respond to the government's motion, plaintiff has not brought forth any proof that would establish jurisdiction in this court.

### 1. The Court Cannot Entertain Claims Against Parties Other Than the United States

 Plaintiff alleges that Mr. Campbell and Ms. Church caused him injury "while acting under color of office and law." Compl. 3; *see also id.* at 6 (requesting that the court prosecute these individuals "for their criminal actions committed against the Plaintiff"). "When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." *Shalhoub v. United States*, 75 Fed.Cl. 584, 585 (2007) (citing *Stephenson v. United States*, 58 Fed.Cl. 186, 190 (2003)); *see also United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Nat'l City Bank of Evansville v. United States*, 143 Ct.Cl. 154, 163 F.Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)). Moreover, the Tucker Act, which confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1), "grants the Court of Federal Claims jurisdiction over suits against the United States, *not against individual federal officials*," *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir. 1997) (emphasis added); *see also* RCFC 10(a) (providing that all claims in the Court of Federal Claims must have "the United States designated as the party defendant"). Accordingly, the court must dismiss the complaint for lack of subject matter jurisdiction to the extent that plaintiff seeks redress against Mr. Campbell and Ms. Church.

### 2. The Court Lacks Jurisdiction to Entertain Tort–Based Claims

 Plaintiff's complaint, which alleges that Mr. Campbell and Ms. Church "establish [ed] an Organized Criminal Conspiracy to steal Plaintiff's UCC document in order to prevent his registering his documents in court," Compl. 5, sounds exclusively in tort. Each alleged violation of federal law cited by plaintiff, *viz.*, conspiracy, deprivation of rights under color of law, perjury, destruction of mail, and theft of mail, implicates tortious conduct. *See, e.g., Modena v. Neff*, 91 Fed.Cl. 29, 34 (Fed.Cl.2010) ("[T]he Court of Federal Claims lacks jurisdiction to hear claims alleging deprivation of civil rights under color of law." (citing *Elkins v. United States*, 229 Ct.Cl. 607, 608 (1981))); *Gant v. United States*, 63 Fed.Cl. 311, 316 (2004) (stating that claims of conspiracy sound in tort "because the acts that furthered the goal of the conspiracy themselves sound in tort"). Indeed, plaintiff himself invokes the "Federal Tort Claims Act" as the basis upon which he brings his claim before the Court of Federal Claims. *See* Compl. 1. The Federal Tort Claims Act ("FTCA") grants the United States district courts exclusive jurisdiction to hear tort claims against the United States, and, therefore, the proper forum for federal tort claims is a United States district court. *See* 28 U.S.C. § 1346(b)(1); *see also Brown v. United States*, 74 Fed.Cl. 546, 549 (2006)

("[T]he FTCA grants exclusive jurisdiction to the United States federal district courts regarding tort claims against the United States Government."). Accordingly, the court is unable to entertain tort-based claims and must dismiss the complaint for lack of subject matter jurisdiction.[8]

## B. The Court Declines to Transfer the Complaint to the District Court

■■■■ Having determined that it lacks subject matter jurisdiction over the complaint, the court addresses whether transfer of this case to the appropriate federal district court is warranted. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed.Cir.2005). Section 1631 of title 28 of the United States Code provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action or appeal could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.[9]

28 U.S.C. § 1631 (footnote added). Thus, in order to transfer a case, the court must determine that (1) it lacks subject matter jurisdiction, (2) at the time the case was filed, the case . could have been brought in the transferee court, and (3) transfer is in the interest of justice. *Id.; United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 n. 5, 1374 (Fed.Cir.1983). A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Faulkner v. United States*, 43 Fed.Cl. 54, 56 (1999) (quoting *Siegal v. United States*, 38 Fed.Cl. 386, 390 (1997)).

■■■■ "The basic test ... for determining if a case should be transferred is whether it would be in 'the interest of justice' to do so." *Busby School of N. Cheyenne Tribe v. United States*, 8 Cl.Ct. 588, 595 (1985). Plaintiff's alleged injuries stem from what he perceives as violations of federal criminal statutes, and his claim for money damages is arbitrarily calculated based upon such violations. Even assuming that plaintiff could file his claim in federal district court, "[g]enerally, private citizens have no authority to institute a federal criminal prosecution. Criminal statutes can be enforced only by the proper authorities of the United States government, such as United States attorneys." *Martinez v. Ensor*, 958 F.Supp. 515, 518 (D.Colo.1997) (citations omitted). Because plaintiff lacks standing to initiate a criminal prosecution of Mr. Campbell and Ms. Church, transfer is inappropriate. Furthermore, in light of plaintiff's request that the court prosecute Mr. Campbell and Ms. Church and the weakness of plaintiff's case on the merits, *see Siegal*, 38 Fed.Cl. at 390, transfer of this action to a federal district court is not in the interest of justice. Indeed, plaintiff's claim is devoid of merit.

## VI. CONCLUSION

For the reasons discussed above, plaintiff's application to proceed *in forma pauperis* is **GRANTED,** the government's motion to dismiss is **GRANTED,** and plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.** The Clerk of Court is directed to enter judgment accordingly. Although the court grants plaintiff's application to proceed *in forma pauperis*, plaintiff shall be assessed the court filing fee in accordance with the standards set forth in 28 U.S.C. § 1915. No costs.

**IT IS SO ORDERED.**

---

8. Furthermore, notwithstanding plaintiff's request that the court prosecute Mr. Campbell and Ms. Church for their alleged actions, see Compl. 6, the court lacks the authority to issue arrest warrants. *See generally Kania v. United States*, 227 Ct.Cl. 458, 650 F.2d 264, 268 (1981) ("[T]he role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court."). Indeed, the court lacks jurisdiction to adjudicate criminal claims. *Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir.1994).

9. The Court of Federal Claims falls within this definition of a court. *See* 28 U.S.C. § 610.