Constance SPEED, Plaintiff,

v.

UNITED STATES, Defendant.

No. 10–125C.

United States Court of Federal Claims.

Jan. 28, 2011.

Victoria L. Plante, Plante Law Firm, P.C., Houston, Texas, for plaintiff.

Dawn E. Goodman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Tony West, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Constance Speed seeks damages and equitable relief for an alleged breach of a settlement agreement ("the Settlement Agreement" or "Agreement") previously entered by Ms. Speed and the United States Postal Service ("USPS") to resolve an employment discrimination claim brought by Ms. Speed under Title VII. Under the terms of the Agreement, Ms. Speed agreed to the dismissal of her discrimination claim against the USPS, her former employer. In exchange for that dismissal, Ms. Speed was to receive a lump-sum payment and a reasonable opportunity to complete certain employment conditions, the satisfaction of which would have mandated her reinstatement as a Postal Inspector in Houston, Texas. Ms. Speed received the lump-sum payment, but six months after the parties entered the Agreement, she was notified by the USPS that she was no longer entitled to the benefit of the contractual provision that allowed her to complete the conditions necessary for her mandatory reinstatement. Ms. Speed alleges that the USPS thereby breached the Settlement Agreement.

Ms. Speed asks the court to: (1) outline the rights and duties of the parties to the

Settlement Agreement; (2) declare that the government's conduct is in violation of the Settlement Agreement; (3) order the government to specifically perform the contract by a date certain; (4) order the government to reinstate Ms. Speed consistent with the Settlement Agreement; (5) in lieu of reinstatement or specific performance, order the government to pay front salary and benefits for the period remaining until normal retirement; (6) order the government to pay all back pay and other benefits to her from the date of breach until the date of her actual reinstatement; (7) order the government to pay Ms. Speed prejudgment and post-judgment interest on back pay and other damages at the highest rate allowable by law; (8) order the government to pay all of Ms. Speed's reasonable attorney's fees and costs; and grant Ms. Speed all additional relief to which she may be entitled. The government has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC").[1]

## BACKGROUND [2]

Ms. Speed was employed as a Postal Inspector for the USPS in Houston, Texas until December 2001, at which time she was removed from her position. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2. Ms. Speed appealed her removal to the Merit Systems Protection Board ("Board"), which ultimately dismissed her case for lack of jurisdiction and untimeliness. *Id.* Contemporaneously, Ms. Speed began receiving workers' compensation from the Department of Labor's Office of Workers' Compensation Programs ("OWCP") for an on-the-job injury she had suffered in November of 2000. *Id.*

In 2004, Ms. Speed brought suit in the United States District Court for the Southern District of Texas alleging that the USPS had subjected her to employment discrimina-

tion in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 241, 253–66 (codified as amended at 42 U.S.C. §§ 2000e to 2000e–17). Am. Compl. ¶ 8. Subsequently, on June 4, 2005, Ms. Speed and the USPS entered into the Settlement Agreement presently at issue. *Id.* Under the terms of the Agreement, Ms. Speed agreed to dismiss her case with prejudice in exchange for a lump-sum payment of $155,000.00. Def.'s App. 1 (Stipulation for Compromise Settlement (submitted as Def.'s App. 1–7)). The Settlement Agreement dictated that the lump-sum payment constituted "full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of . . . the same subject matter that gave rise to" Ms. Speed's Title VII suit. *Id.* However, the Settlement Agreement also provided that:

> [Ms. Speed] is to be reinstated to her position of Postal Inspector in the Houston Office. . . . [Ms. Speed's] reinstatement is subject to: (a) [Ms. Speed's] passing a Fitness for Duty Examination, including physical and mental examinations, [showing] that she is fit to fully perform the duties of a Postal Inspector; and (b) [Ms. Speed's] attend[ing] and complet[ing] a basic Inspector Training Academy Course on an audit basis at the Career Development Division in Potomac, Maryland; and (c) [Ms. Speed's] . . . obtain[ing] successful qualifying scores with her assigned handgun and shotgun. [Ms. Speed's] failure to meet all of the requirements set forth in (a), (b), and (c) above will result in [Ms. Speed's] not being reinstated as a Postal Inspector. However, [Ms. Speed] shall be given reasonable opportunity to pass these exams, complete the course, and attain qualifying scores as would any other Basic

---

1. The government submitted an appendix of documents with its motion to dismiss, and the court has not excluded those documents. Consequently, in accord with RCFC 12(d), the government's motion to dismiss for failure to state a claim has been converted into a motion for summary judgment under RCFC 56.

2. For the purposes of resolving defendant's motion, the court presumes that the allegations in Ms. Speed's complaint are true. The recitation of facts is provided solely for purposes of providing a background for analysis of the pending motions and does not constitute findings of fact by the court. However, unless otherwise noted, the facts set out appear to be undisputed.

Inspector Candidate attending the Inspector Training Academy Course.

*Id.* at 3.

Ms. Speed received the lump-sum payment of $155,000.00 from the USPS. Am. Compl. ¶ 9 n. 1. However, by December of 2005, six months after the parties entered the Settlement Agreement, Ms. Speed had not completed any of the prerequisites mandated by the Agreement for her reinstatement. *Id.* ¶ 9. She apparently did attempt to undergo a fitness-for-duty examination to satisfy requirement (a) of the Agreement, but that examination was not completed successfully due to a lifting restriction. *See* Def.'s App. 24.[3] In her complaint and the filings received by the court thus far, Ms. Speed has neither alleged nor contended that she attempted to comply with the remaining two requirements. After a series of correspondence between Ms. Speed and the USPS, the USPS notified Ms. Speed on December 23, 2005, that she would not be reinstated to her former position due to her failure to complete the conditions of such reinstatement set out in the Settlement Agreement. *Id.;* Def.'s Mot. at 3. The USPS noted that Ms. Speed had failed to pass the fitness-for-duty examination and thus had determined that she was not fit to perform the duties of a Postal Inspector. Am. Compl. ¶ 9. This determination apparently also reflected medical documentation recording Ms. Speed's lifting restriction.

Throughout 2005, Ms. Speed continued to receive benefits from the OWCP. Def.'s Mot. at 3. In March of 2006, however, the OWCP advised Ms. Speed that she would no longer receive such benefits because her medical report indicated that she could fully perform the duties of her position. *Id.*[4] Shortly thereafter, Ms. Speed informed the USPS that her weight restriction had been lifted and that she was able to take the fitness-for-duty examination for reinstatement pursuant to the terms of the Settlement Agreement. *Id.;* Pl.'s Resp. at 2. At that time, Ms. Speed also requested that she be given priority consideration for any further appointment due to OWCP's termination of her benefits. Def.'s Mot. at 3.[5]

The USPS responded on May 5, 2006, in a letter advising Ms. Speed that although reinstatement under the Settlement Agreement was no longer possible, she would be given priority consideration. Def.'s App. 24–25. The USPS also informed Ms. Speed that because of her lengthy absence from service she would have to pass a physical fitness-for-duty examination to be eligible for reappointment. *Id.* at 25.[6] Upon successful completion of a physical examination, the USPS stated that Ms. Speed would receive priority consideration for the next available class at the Postal Inspection Academy ("Academy"), where she would be required to attend all classes and training sessions and pass all required exams. *Id.*

On May 15, 2006, the USPS offered Ms. Speed a position as a Postal Inspector in New Orleans, Louisiana, subject to the conditions detailed in its letter of May 5th. Def.'s App. 25. The USPS informed Ms. Speed that her appointment to the New Orleans position would be effective June 9, 2006, commencing with her enrollment in a class to begin on that date at the Academy. *Id.* Ms. Speed apparently passed the fitness examination; however, she failed to report to her assigned course at the Academy. *Id.*

In a letter dated July 21, 2006, the USPS advised Ms. Speed that the appointment in New Orleans was offered pursuant to her restoration rights under the regulation gov-

---

3. The lifting restriction was imposed by Ms. Speed's worker's compensation physician in or about December of 2004. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 2 n. 2. At the time the parties entered the Settlement Agreement, the USPS was apparently aware of Ms. Speed's lifting restriction. *Id.*

4. Ms. Speed's lifting restriction appears to have been removed on or about February 26, 2006. *See* Pl.'s Resp. at 2 n. 2.

5. Federal regulations, 5 C.F.R. § 353.301(b), require that individuals such as Ms. Speed, who had received OWCP benefits but had subsequently been determined by the OWCP to be fully recovered from the compensable injury after more than one year of receiving such benefits, be given priority consideration for any further appointment. Def.'s Mot. at 3–4.

6. These requirements were imposed pursuant to the Inspection Service Manual. Def.'s Mot. at 4.

erning priority consideration to injured employees, not under the Settlement Agreement. Def.'s App. 25. The letter also stated that based upon her failure to report to the class at the Academy, it appeared that Ms. Speed no longer desired reemployment with the USPS and that the agency consequently was closing the issue of her reinstatement under any and all terms. *Id.* at 25–26.[7]

Thereafter, Ms. Speed filed an appeal with the Board claiming that the USPS had wrongfully deprived her of her restoration rights. Am. Compl. ¶ 10. The Board dismissed the case for lack of jurisdiction, finding that for an employee "who recovers from a compensable injury after more than one year, there is no absolute right to restoration—rather the person is entitled to priority consideration for reemployment." Def.'s App. 26 (*Speed v. United States Postal Serv.*, DA 0353–06–0594–I–1 (M.S.P.B. Nov. 29, 2006)) (citing 5 C.F.R. § 353.301(b)). The Board found that the USPS had given Ms. Speed priority consideration, Def.'s App. 31, and it also concluded that it lacked jurisdiction over her claim to the extent she was relying upon the Settlement Agreement as a source of her entitlement to reinstatement. *Id.* at 29–30. The Court of Appeals for the Federal Circuit summarily affirmed the Board's decision in 2008. *See* Def.'s App. 37–38 (*Speed v. Merit Sys. Prot. Bd.*, No. 2007–3257 (Fed. Cir. June 6, 2008)).

On July 2, 2009, Ms. Speed filed suit for breach of contract in Texas state court. Am. Compl. ¶ 11. The case was removed by the government to the United States District Court for the Southern District of Texas in August of 2009. *Id.* The government thereafter filed a motion to dismiss, or, in the alternative for transfer to this court. Def.'s Mot. at 5. In its motion, the government argued that the district court lacked jurisdiction because Ms. Speed had not established a waiver of sovereign immunity which would allow her breach of contract claim against the United States to proceed in federal district court. Def.'s App. 11–12 (Def.'s Mot. to Dismiss or in the Alternative, Mot. to Transfer Venue, *Speed v. John E. Potter, Postmaster*

*Gen., United States Postal Serv.*, No. H–09–2506 (S.D. Tex. Oct. 11, 2009)). The government alternatively contended that "[a]ctions brought against the government for breach of a settlement agreement seeking monetary damages are contractual claims, and are to be brought in the United States Court of Federal Claims pursuant to the Tucker Act, assuming that the amount sought exceeds $10,000.00." *Id.* at 12–13. In response, Ms. Speed averred that she was not opposed to transferring the case to the Court of Federal Claims. Def.'s App. 15–16 (Pl.'s Resp. to Def.'s Mot. to Dismiss and Mot. to Transfer Venue, *Speed v. John E. Potter, United States Postal Serv.*, No. 4:09–cv–02506 (S.D. Tex. Oct. 30, 2009)). The district court subsequently transferred the case to this court. Am. Compl. ¶ 11.

On April 23, 2010, Ms. Speed filed her first amended complaint in this court. She alleges that the government breached the terms of the Settlement Agreement because the USPS "failed to reinstate her under the conditions of the Settlement Agreement and has stated it will not reinstate her even if she satisfies all conditions under the Settlement [Agreement]." Am. Compl. ¶ 13. The government argues that this court lacks jurisdiction to entertain Ms. Speed's claim because she has not established that she possesses a substantive right under the Settlement Agreement that can be fairly interpreted as mandating compensation by the government. Def.'s Mot. at 7–10. This is so, the government argues, because the conditional reinstatement provision of the Settlement Agreement cannot be read as mandating a right of recovery in damages nor does that provision explicitly provide for money damages in the event of a breach. *Id.* at 9–11. Alternatively, the government asserts that the court does not possess jurisdiction to award the relief that Ms. Speed requests because the court may not grant specific performance in her case nor may it award the front pay and back pay she seeks. *Id.* at 12–16. The government lastly contends that even if the court concludes that it possesses jurisdiction over Ms. Speed's claims, she fails to state a

---

7. Ms. Speed states that she did not accept the New Orleans appointment because "it was mate-

rially different from the terms of the Settlement." Am. Compl. ¶ 10.

claim upon which relief can be granted. *Id.* at 16–17.

## STANDARDS FOR DECISION

### A. *Subject Matter Jurisdiction*

"Jurisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *Ultra–Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed.Cir.2003) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed.Cir.2002)). "A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed.Cir.2010).

■ When considering a motion to dismiss for lack of subject matter jurisdiction, the court "accepts as true the undisputed allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff." *De Maio v. United States*, 93 Fed.Cl. 205, 209 (2010) (citing *Hamlet v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir. 1989)). However, the plaintiff may not merely rely on the allegations contained in its complaint; rather she must "bring forth relevant, competent proof to establish jurisdiction." *Hall v. United States*, 91 Fed.Cl. 762, 770 (2010) (quoting *Murphy v. United States*, 69 Fed.Cl. 593, 600 (2006)).

■ To establish subject-matter jurisdiction over a suit against the federal government, a plaintiff must show both a "waiv[er of] sovereign immunity together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (citations omitted). The Tucker Act serves as a waiver of sovereign immunity and grants this court jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, "does not create a substantive cause of action; … to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc portion) (citing *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Allegations of a contract with the government and breach of that contract can suffice for this purpose, so long as monetary relief is sought. *See Ransom v. United States*, 900 F.2d 242, 244 (Fed.Cir. 1990) ("To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract.") (affirming dismissal of breach-of-contract claims because there was no contract with the government).

### B. *Summary Judgment*

■ As noted earlier, the government attached to its motion to dismiss an appendix consisting of the prior decisions and selected motions filed by the parties in preceding stages of this dispute, and the court has relied upon some of those materials in reconstructing the factual background to this case. Rule 12(d) provides that "[i]f, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." Accordingly, the court will treat the government's motion to dismiss for failure to state a claim as a motion for summary judgment.

A grant of summary judgment is warranted when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute is one that "may

reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

The party moving for summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Consequently, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). If the moving party establishes that there is no genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." RCFC 56(e)(2). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial[,]' " and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### ANALYSIS

#### A. Damages as a Remedy for Breach of Contract

 Ms. Speed relies upon the Settlement Agreement—a contract—as the source of her substantive right to money damages. *See Kasarsky v. Merit Sys. Prot. Bd.,* 296 F.3d 1331, 1336 (Fed.Cir.2002) ("Disputes involving settlement agreements are governed by contract principles."); *Greco v. Department of the Army,* 852 F.2d 558, 560 (Fed. Cir.1988) ("It is axiomatic that a settlement agreement is a contract."). In addition, it is a well-settled principle that "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.,* 518 U.S. 839, 885, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (plurality op.); *see also id.* at 919, 116 S.Ct. 2432 (Scalia, J., concurring in judgment). This presumption extends to con-

tracts with the government just as it does to contracts between private parties. *See San Juan City Coll. v. United States,* 391 F.3d 1357, 1361 (Fed.Cir.2004) (" '[I]n the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement.' "); *Sanders v. United States,* 252 F.3d 1329, 1334 (Fed.Cir.2001) (same); *see also Mobil Oil Exploration and Producing Se., Inc. v. United States,* 530 U.S. 604, 608–09, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." (quoting *Winstar Corp.,* 518 U.S. at 895, 116 S.Ct. 2432)).

In the government's view, however, these basic principles of contract law lose their force when jurisdiction is predicated upon the Tucker Act. The government first contends that "for this [c]ourt to possess jurisdiction ... over this case, the agreement must provide for monetary relief in the event of a breach." Def.'s Mot. at 8 (citing *Schnelle v. United States,* 69 Fed.Cl. 463, 465 n. 1, 466–67 (2006)). Ameliorating this position slightly, the government alternatively asserts that Ms. Speed must demonstrate that the contractual provision allegedly breached can "be fairly interpreted as mandating compensation by the [g]overnment for the damage sustained." *Id.* (citing *Holmes v. United States,* 92 Fed.Cl. 311, 317 (2010); *Griswold v. United States,* 61 Fed.Cl. 458, 465 (2004)).

Ms. Speed responds that she need not satisfy either of the government's proposed standards for Tucker Act jurisdiction over a contractual dispute. Relying primarily upon *Greenhill v. United States,* 81 Fed.Cl. 786, 790 (2008), she argues that her claim is within the ambit of the Tucker Act because "[m]oney damages are the default remedy for breach of contract, and there is no generic requirement under the Tucker Act that contracts must include specific language indicating that damages will be paid upon a breach." Pl.'s Resp. at 9.

The existence of a request for monetary relief as a requirement for jurisdiction under Section 1491(a) is not itself at issue. In *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), the Supreme Court articulated the now-canonical principle that a plaintiff must present a claim for "actual, presently due money damages from the United States" to fall within the jurisdictional reach of the Tucker Act. *See also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Sec.*, 490 F.3d 940, 943 (Fed.Cir.2007) ("[F]or a claim to be brought under … the Tucker Act … the claim must be for monetary relief."); *National Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir. 1998) ("The basic rule that the Supreme Court announced in *King* is still in effect.").[8] All claims brought before this court, including those based upon a contract, must meet this foundational requirement of Tucker Act jurisdiction. *See Gonzales & Gonzales*, 490 F.3d at 944 ("[F]or the Court of Federal Claims to have jurisdiction over a breach of contract claim against the government, the claim must be one for monetary relief.").

Respecting the need to show a money-mandating source, an earlier venerable precedent addressing jurisdictional requirements under the Tucker Act drew a distinction between claims arising under the Constitution, a statute, or a regulation, and those stemming from a contract. In *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct.Cl.1967), the court stated that "[u]nder Section 1491 what one must always ask is whether the *constitutional clause or the legislation* which the claimant cites can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained" (emphasis added).[9] In doing so, the court explicitly exempted from the money-mandating requirement claims "which … fall under another head of jurisdiction, such as a contract with the United States." *Id.* at

1008 n. 7. The Supreme Court subsequently adopted this distinction in *Testan*, 424 U.S. at 400, 96 S.Ct. 948, stating that where a plaintiff does not "*rest [its] claim[ ] upon a contract* … [or] seek the return of money paid by [it] to the [g]overnment[,] … the asserted entitlement to money damages depends upon whether any *federal statute* 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damages sustained.'" (emphasis added). Instructively, *Testan* and *Eastport* "were careful to exclude from [the money-mandating] analysis contract cases." *Stovall v. United States*, 71 Fed.Cl. 696, 700 (2006).

The Supreme Court has given continuing force to this understanding by notably excluding contract claims from its subsequent iterations of the money-mandating requirement respecting Tucker Act jurisdiction. *See, e.g., White Mountain Apache*, 537 U.S. at 472, 123 S.Ct. 1126 ("As we said in [*Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961], a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained.'") (emphasis added); *Mitchell*, 463 U.S. at 218, 103 S.Ct. 2961 ("Thus, for claims against the United States '*founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department,*' 28 U.S.C. § 1491, a court must inquire whether the source of substantive law can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damages sustained.") (emphasis added). In its recitation of requirements for Tucker Act jurisdiction, the Federal Circuit similarly has taken care to maintain the division between contract claims and claims based upon the Constitution, a statute, or a regulation, which are subject to the requirement that they fairly be interpreted as mandating compensation by the federal government.[10]

---

8. *King* was superseded in other respects by statute as noted in *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed.Cir.1990), and *Infiniti Info. Solutions, LLC v. United States*, 93 Fed.Cl. 699, 702 n. 2 (2010).

9. *Eastport* was abrogated in part on other grounds by *Malone v. United States*, 849 F.2d 1441, 1444–45 (Fed.Cir.1988).

10. *See, e.g., Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1307 (Fed.Cir. 2008) ("[J]urisdiction under the Tucker Act exists if the *statute, regulation, or constitutional provi-*

Although a few cases in this court have subjected contract claims to the money-mandating requirement, those cases "appear to conflate the requirement [articulated in *King* ] that claims be payable in money with the *Eastport* money-mandating analysis." *Stovall*, 71 Fed.Cl. at 700 (citing *Schnelle*, 69 Fed.Cl. at 466; *Griswold*, 61 Fed.Cl. at 465–66; *Lee v. United States*, 33 Fed.Cl. 374, 378 (1995)).[11] Indeed, as the court in *Stovall* noted, were an *explicit* money-mandating requirement applicable to contract claims, "this court would have lacked jurisdiction over *Winstar* and all of its various progeny, none of which involved contracts containing 'money-mandating' language." 71 Fed.Cl. at 700. Subjecting contract claims to a requirement that they must explicitly provide for a damages remedy would exclude from this court's jurisdiction the lion's share of contracts entered into by the government. *See San Juan City Coll.*, 391 F.3d at 1361 ("Normally

contracts do not contain provisions specifying the basis for the award of damages in case of breach.").

Nevertheless, in its reply, defendant notes that the Federal Circuit "requir[ed] a plaintiff to point to a money-mandating provision in a contract in order to establish jurisdiction" in *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338 (Fed.Cir.2008). Def.'s Reply at 6. In that case, Rick's Mushroom Service had entered a cost-share agreement with the government, under which the National Resources Conservation Service ("NRCS"), a unit of the Department of Agriculture, would provide building and operational specifications to Rick's to ensure Rick's compliance with local conservation requirements. 521 F.3d at 1341. After implementing NRCS's specifications, Rick's Mushroom Service was successfully sued for contaminating an adjacent property owner's land. *Id.*

---

sion that is the basis for the complaint 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained,' and is 'reasonably amenable to the reading that it mandates a right of recovery in damages.' " (citations omitted)) (emphasis added); *Adair v. United States*, 497 F.3d 1244, 1250 (Fed.Cir.2007) ("When the source of such alleged right [for money damages against the United States] is *a statute*, it can only support jurisdiction if it qualifies, as most statutes do not, as money-mandating.") (emphasis added); *Fisher*, 402 F.3d at 1173 ("For decades the Supreme Court has applied what is known as the *Mitchell* test: *a statute or regulation* is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].' " (quoting *Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961)) (en banc portion) (emphasis added); *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed.Cir.2004) (noting that "claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver" and distinguishing such claims from "claims brought under a 'money-mandating' statute"); *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed.Cir. 2003) ("The actions for which the Tucker Act waives sovereign immunity are actions pursuant to *contracts with the United States*, actions to recover illegal exactions of money by the United States, and *actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders.*") (emphasis added); *Tippett v. United States*, 185 F.3d 1250, 1254–55 (Fed.Cir.1999) ("*When a contract is not involved*, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a constitutional provision,

a statute, or a regulation that provides a substantive right to money damages.") (emphasis added), *abrogated in part on other grounds by Fisher*, 402 F.3d 1167 (en banc portion).

11. The duality between the money-damages principle acknowledged in *King* and the money-mandating principle espoused in *Eastport* is reflected in the Supreme Court's thorough explanation of Tucker Act jurisdiction in *Mitchell*, 463 U.S. at 216–17, 103 S.Ct. 2961. The Court summarized the Tucker Act's jurisdictional framework as follows:

If a claim falls within the Tucker Act, the United States has presumptively consented to suit.... It nonetheless remains true that the Tucker Act " 'does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell*, [445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) ] (quoting [*Testan*, 424 U.S. at 398, 96 S.Ct. 948] ). A substantive right must be found in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1491. *Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, see* [*King*, 395 U.S. at 2–3, 89 S.Ct. 1501], *and the claimant must demonstrate that the source of substantive law he relies upon* " 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damages sustained.' " *Testan*, 424 U.S. at 400 [96 S.Ct. 948] (quoting *Eastport*, 178 Ct.Cl. at 607 [372 F.2d 1002]).

(Emphasis added).

Thereafter, Rick's brought suit in this court alleging, among other things, a claim for breach of contract. *Id.* at 1342. After stating that "[t]he government's consent to suit under the Tucker Act does not extend to every contract," *id.* at 1343 (citing *Sanders,* 252 F.3d at 1335; *Kania v. United States,* 650 F.2d 264, 268 (Ct.Cl.1981)), the Federal Circuit concluded that Rick's breach-of-contract claim fell outside of the Tucker Act's jurisdiction because the cost-share agreement "d[id] not provide a substantive right to recover money-damages and Rick's d[id] not point to a money-mandating source of law to establish jurisdiction under 28 U.S.C. § 1491(a)(1)." *Id.* at 1343.

*Rick's Mushroom* does not salvage the government's argument in this case. Notwithstanding *Rick's Mushroom,* the Federal Circuit has consistently excluded claims based upon a contract from any money-mandating requirement. *See supra,* note 10. Although the presumption of damages for breach of contract may not extend to agreements arising out of the criminal justice system, *see Sanders,* 252 F.3d at 1334–35; *Kania,* 650 F.2d at 267–68, or to the unique cost-share agreement at issue in *Rick's Mushroom,* the court can ascertain no principled reason why it would not apply to the contract at the center of the present dispute. *See Chevron U.S.A. Inc. v. United States,* 71 Fed.Cl. 236, 261 (2006) (holding that a plaintiff is "not required to identify a specific money-mandating provision in [contracts with the government] because inherent in every breach of contract is a right to money damages").[12]

■ The court thus concludes that Ms. Speed's breach-of-contract claim is within the jurisdiction of this court to the extent that Ms. Speed presents a claim for "actual, presently due-money damages from the United States." *King,* 395 U.S. at 3, 89 S.Ct. 1501.

### B. *Specific Performance*

Aside from money damages, Ms. Speed also requests that the court "order [the gov-ernment] to specifically perform the contract by a certain date." Am. Compl. ¶ 14(d). The government avers that the court's limited equitable authority under Section 1491(a) does not allow for an order of specific performance in Ms. Speed's case. Def.'s Mot. at 12.

■ " 'Except in strictly limited circumstances' . . . the Tucker Act does not authorize the Court of Federal Claims to order equitable relief such as specific performance, a declaratory judgment, or an injunction." *Smalls v. United States,* 87 Fed.Cl. 300, 307 (2009) (quoting *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000)) (additional citation omitted). The circumstances in which the court may employ equitable authority when exercising jurisdiction under Section 1491(a) are derived from the Remand Act of 1972, Pub.L. No. 92–415, § 1, 86 Stat. 652, and are codified in 28 U.S.C. § 1491(a)(2) as follows:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records.

*See* H.R.Rep. No. 92–1023 (1972) ("When the Court of Claims does have jurisdiction over any case before it, this bill will enable the court to grant all necessary relief in one action.").

■ Under the Agreement, the government was required to allow Ms. Speed a reasonable opportunity to complete the three prerequisites for her reinstatement. Thus, an order directing the government to specifically perform would not demand Ms. Speed's reinstatement; rather, it would require the government to grant Ms. Speed the reasonable opportunity to complete the three requirements. Breach of that "reasonable opportunity" obligation appears to be one of the

---

**12.** A different result might arise in cases in which the contract at issue explicitly provided alternative remedies in the event of a breach. *See, e.g., Phillips v. United States,* 77 Fed.Cl. 513, 518 (2007); *Schnelle,* 69 Fed.Cl. at 466–67.

While an explicit provision for non-monetary breach remedies may displace or rebut the presumption of damages in some cases, the Settlement Agreement at issue here does not provide for an alternative remedy for breach.

bases for Ms. Speed's claims. *See* Am. Compl. ¶ 14(c). Relief in the form of damages must take precedence in this court given the jurisdictional and factual setting at hand. In this instance, ordering specific performance in addition to awarding damages would amount to a double recovery for the same alleged breach. Therefore, the government's motion to dismiss is granted as to Ms. Speed's request for specific performance.

### C. *Back Pay, Reinstatement, and Front Pay*

Ms. Speed additionally asks the court to award back pay and all other benefits from the date of the government's alleged breach until the date of reinstatement. Am. Compl. 14(g). Ms. Speed also requests that the court order her reinstatement, *id.* ¶ 14(e) or, "in lieu of reinstatement[,]" that the court award front pay until the date of her normal retirement. *Id.* ¶ 14(f). In response, the government avers that the court may not order Ms. Speed's requested relief because she was never appointed to the position that would have afforded such benefits. *See* Def.'s Mot. at 12–16. The government also argues that the court may not order reappointment as "[i]t is the opportunity to complete the[ ] prerequisites, not entitlement to a position as a postal inspector, which forms the basis of Ms. Speed's complaint." *Id.* at 13.

Under 28 U.S.C. § 1491(a)(2), the court's equitable authority encompasses the power to issue orders directing reinstatement and "placement in appropriate duty." 28 U.S.C. § 1491(a)(2). This provision, however, does not benefit Ms. Speed. As noted, the Agreement required that Ms. Speed be given a reasonable opportunity to complete the three prerequisites for her reinstatement; if, and only if, she completed those three requirements, her reinstatement was mandatory. Ms. Speed has not alleged that she fulfilled the three requirements. As a result, she cannot rely upon the Agreement

as a source of law entitling her to reinstatement.

Moreover, "[t]he established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." *Testan*, 424 U.S. at 402, 96 S.Ct. 948 (citing *United States v. McLean*, 95 U.S. 750, 24 L.Ed. 579 (1878); *Ganse v. United States*, 180 Ct.Cl. 183, 186, 376 F.2d 900 (1967)); *see also Todd v. United States*, 386 F.3d 1091, 1095 (Fed.Cir.2004) ("This court does not read the holding in *Testan* as limited to cases involving the Classification Act or the Back Pay Act.... *Testan* confirms the long-standing rule that 'one is not entitled to the benefit of a position until he has been duly appointed to it.'"); *Horner v. Acosta*, 803 F.2d 687, 692 (Fed.Cir.1986) ("It is well established that an appointment is necessary for a person to hold a government position and be entitled to its benefits."). Accordingly, this court "cannot grant monetary relief for the loss of a position to which a federal employee has not been appointed." *Westover v. United States*, 71 Fed.Cl. 635, 640 (2006) (citing *Wienberg v. United States*, 192 Ct.Cl. 24, 35, 425 F.2d 1244 (1970); *Tierney v. United States*, 168 Ct.Cl. 77, 80 (1964)).[13]

In her complaint, Ms. Speed concedes that she was never reinstated to the Postal Inspector position for which she seeks back pay and front pay. Am. Compl. ¶ 13 (noting that the government "failed to reinstate" Ms. Speed). However, in her response to the government's supplemental briefing on the matter, Ms. Speed argues that because of the "mandatory" language of the Agreement, she "received an appointment as Postal Inspector when [the government] agreed to reinstate her." Pl.'s Resp. to Def.'s Supplemental Br. at 3. Ms. Speed also attempts to avoid the appointment rule by asserting that she "does not seek 'appointment' to the position as Postal Inspector [but rather] [s]he seeks 're-instatement' to the position pursuant to the

---

13. There was some debate between the parties as to whether Ms. Speed was seeking back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596, and the viability of any claim she might have brought under that statute. *See* Def.'s Mot. at 14–16; Pl.'s Resp. at 9; Def.'s Reply at 7. Be-

cause Ms. Speed unequivocally avers that she "is *not* asserting a claim pursuant to the Back Pay Act[,]" but rather seeks back wages as "a form of damages[,]" Pl.'s Resp. at 9, the court will not address the Back Pay Act.

mandatory language of the Settlement Agreement." *Id.*

 A federal employee is appointed to a position "when the last act to be done by the [appointing authority] [i]s performed." *National Treasury Emps. Union v. Reagan,* 663 F.2d 239, 242 (D.C.Cir.1981) (quoting *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 156, 2 L.Ed. 60 (1803)). An appointment requires "an authorized appointing officer who takes an action that reveals his awareness he is making an appointment in the United States civil service, and action by the appointee denoting acceptance." *Watts v. Office of Pers. Mgmt.,* 814 F.2d 1576, 1580 (Fed.Cir.1987). Provisional selection for employment will not do; *"definite, unconditional action* by an authorized federal official designating an individual to a specific civil service position is necessary to fulfill the appointment requirement." *Horner,* 803 F.2d at 693 (emphasis added); *see also Calvin v. United States,* 63 Fed.Cl. 468, 471–73 (2005) (concluding that offers of conditional appointment were supplanted by actual appointments to lesser positions).

 Under these criteria, Ms. Speed was never appointed or reinstated to her former position as a Postal Inspector. There is no evidence before the court that an authorized official took any action to indicate to Ms. Speed that she was appointed nor is there any evidence that Ms. Speed executed a standard federal employment form. *See Watts,* 814 F.2d at 1580 (plaintiff was not appointed where he did not execute a standard federal employment form and was never given an oath of office); *Bevans v. Office of Pers. Mgmt.,* 900 F.2d 1558, 1562–63 (Fed.Cir. 1990) (plaintiff was not appointed where he did not execute appointive document such as standard federal employment form, no authorized persons indicated to plaintiff he was being appointed, and appropriate taxes and deductions of appointment were not withheld from plaintiff's salary).

Most importantly, the Agreement makes patent the conditional nature of Ms. Speed's entitlement to her former position. It provided that Ms. Speed's "reinstatement is subject to" the three prerequisites and that Ms. Speed's "failure to meet all of the require-

ments set forth . . . will result in [Ms. Speed] not being reinstated as a Postal Inspector." Def.'s App. 3 (Stipulation for Compromise Settlement); *cf. Calvin,* 63 Fed.Cl. at 470–71 (offers of conditional appointment were never implemented); *Alkalay v. United States,* 54 Fed.Cl. 93, 98 (2002) (plaintiffs were not appointed due to conditional nature of offer where employment approval memoranda proposed that plaintiffs would be placed into positions "as soon as budget clearance is obtained").

Consequently, Ms. Speed's claims for reinstatement to the position of Postal Inspector and for back pay and front pay must be dismissed.

### D. *Amendment of Complaint*

Ms. Speed is granted leave to amend her complaint to articulate more explicitly a claim that she has suffered damages attributable to the government's alleged breach of the "reasonable opportunity" provisions of the Settlement Agreement. *See* RCFC 15(a)(2) ("The court should freely give leave [to amend pleadings] when justice to requires."); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

### CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED IN PART and DENIED IN PART. Treating the government's motion as one for summary judgment, that motion is also GRANTED IN PART and DENIED IN PART. Pursuant to RCFC 15(a)(2), the court grants Ms. Speed leave to amend her complaint in accord with this decision to state a claim for breach of the "reasonable opportunity" provision of the Settlement Agreement, coupled with a demand for money damages. Ms. Speed shall file an amended complaint on or before February 28, 2011.

It is so ORDERED.