# In the United States Court of Federal Claims

No. 10-125C

(Filed: February 7, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **CONSTANCE SPEED,** | ) ) ) | Claim for damages stemming from alleged breach of a settlement agreement; |
| **Plaintiff,** | ) ) ) ) | motion for summary judgment; unambiguous language of agreement; bar on use of extrinsic evidence to create |
| v. | ) ) | ambiguity |
| **UNITED STATES,** | ) ) | |
| **Defendant.** | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Victoria L. Plante, Plante Law Firm, P.C., Houston, Texas, for plaintiff.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Shoshana O. Epstein, Office of the General Counsel, United States Postal Service.

**OPINION AND ORDER**

LETTOW, Judge.

Constance Speed seeks monetary and equitable relief for an alleged breach of a settlement agreement ("Settlement Agreement" or "Agreement") previously entered by Ms. Speed and the United States Postal Service to resolve an employment discrimination claim brought by Ms. Speed under Title VII. The terms of the Agreement dictated that Ms. Speed would dismiss her Title VII case against the Postal Service in exchange for a single lump sum payment, and that Ms. Speed would be reinstated to her position as a Postal Inspector in the Houston office of the Postal Service, "subject to all applicable governmental rules, regulations, and laws." Second Am. Compl., Ex. A (Settlement Agreement) ¶ 6. The Agreement stipulated that Ms. Speed should have a "reasonable opportunity" to satisfy the requisite exams, courses, and performance scores upon which her reinstatement was contingent, including a physical fitness exam. *Id.* Ms. Speed received the lump sum payment in full, but did not complete the reinstatement process. Six months after the parties entered into the Agreement, the Postal Service notified her that she was no longer entitled to the benefit of the reinstatement provision of the Agreement due to her failure to meet the physical criteria of the Postal Inspector position.

Ms. Speed alleges because the Postal Service was obligated to waive certain physical requirements, that the Postal Service consequently breached the Settlement Agreement. The court previously denied a motion by the government to dismiss Ms. Speed's claim, ruling that Ms. Speed had adequately stated a cause of action for breach of contract that was within the subject matter jurisdiction of the court because her contractual claim was susceptible to redress by payment of monetary damages. *See Speed v. United States*, 97 Fed. Cl. 58 (2011).

Now, invoking Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), the government has filed a motion for summary judgment in its favor. This motion has been fully briefed and argued at a hearing. The court concludes that the Settlement Agreement explicitly and unambiguously stated that for reinstatement, Ms. Speed had to fulfill all requirements applicable to and for the position of a Postal Inspector, without any exception or waiver, contrary to Ms. Speed's contention. Additionally, based on the record in the case, there is no genuine issue of material fact that precludes entry of summary judgment. The undisputed facts demonstrate that Ms. Speed did not take reasonable steps towards satisfying the requirements for reinstatement. Consequently the Settlement Agreement was not breached when the government declined to reinstate her.

## BACKGROUND

Ms. Speed is a former Postal Inspector, most recently based in Houston, Texas. *See* Def.'s Mot. For Summary Judgment ("Def.'s Mot.") at 2. As a Postal Inspector, Ms. Speed was required to be able to perform the essential duties of that position, which include carrying firearms, making arrests, and pursuing and restraining suspects. *See United States Postal Inspection Service: Who We Are*, https://postalinspectors.uspis.gov/employment/whoweare.aspx (last visited Feb. 7, 2013). One of the specific physical requirements of the position is that a Postal Inspector must be able to lift 70 pounds. App. to Def.'s Mot. for Summary Judgment ("App.") at 35 (Medical Examination & Assessment Form) (¶ 1 of Functional Requirements). In November of 2000, Ms. Speed suffered an on-the-job injury to her shoulder. Def.'s Mot. at 2. That injury impaired her ability to lift objects and to rotate her shoulder. Nevertheless, she retained her position as a Postal Inspector until December 2001, at which time she was removed by the Postal Service for failure to follow three direct orders to participate in routine semi-annual shotgun qualification. *Id.* Ms. Speed appealed this removal to the Postal Service's Merit Systems Protection Board, but the appeal was unsuccessful. *See id.*

On March 18, 2002, Ms. Speed began receiving benefits from the United States Department of Labor's Office of Workers' Compensation Programs due to her shoulder injury. Def.'s Mot. at 2. As part of treatment for this injury, Ms. Speed had rotator cuff surgery in 2003. *Id.* During the course of her rehabilitation, Ms. Speed sustained a separate injury to her elbow. *Id.* at 4 n.2. This event occurred in late 2004 or early 2005, and resulted in her treating physician, Dr. Dean, imposing a twenty-pound lifting restriction on her activities. *Id.* This restriction conflicted with the Postal Service's standard 70-pound lifting capability requirement for all Postal Inspectors. App. at 35 (Medical Examination & Assessment Form).

In 2004, Ms. Speed filed a Title VII employment discrimination lawsuit against the government in the United States District Court for the Southern District of Texas. *See* Second

Am. Compl. ¶ 7; Def.'s Mot. at 2-3. The parties engaged in a nine-hour mediation session in April 2005, and entered into a formal Settlement Agreement on June 4, 2005. Def.'s Mot. at 3. Both parties were represented by counsel during the negotiations and at the signing of the Agreement. *See id.* Under the Agreement, Ms. Speed was to dismiss her case with prejudice, in exchange for a sum of $155,000 "in full settlement and satisfaction of any and all claims, demands, rights, and causes of action" related to the Title VII claim, and both parties agreed in the writing that the sum "represents the entire amount of the compromise settlement." Second Am. Compl., Ex. A (Settlement Agreement) ¶¶ 2, 5. The Agreement further provided that:

> Plaintiff is to be reinstated to her position of Postal Inspector in the Houston Office. . . . Plaintiff's reinstatement is subject to: (a) Plaintiff passing a Fitness for Duty Examination, including physical and mental examinations, that she is fit to fully perform the duties of a Postal Inspector; and (b) Plaintiff attend and complete a basic Inspector Training Academy Course on an audit basis at the Career Development Division in Potomac, Maryland; and (c) Plaintiff shall obtain successful qualifying scores with her assigned handgun and shotgun. . . . Plaintiff shall be given reasonable opportunity to pass these exams, complete the course, and attain qualifying scores as would any other Basic Inspector Candidate attending the Inspector Training Academy Course.

*Id.* ¶ 6. On July 11, 2005, the district court dismissed plaintiff's case in light of the Agreement. Def.'s Mot. at 3.

In accord with the Settlement Agreement, the government paid Ms. Speed the full $155,000. Second Am. Compl., ¶ 9 n.1. The process of reinstating Ms. Speed as a Postal Inspector began on the same day that the Agreement was signed. Ms. Tammie Moore, the Inspection Service attorney assigned to this matter, contacted a Postal Service-contracted physician to request assistance in performing a medical evaluation of Ms. Speed. Def.'s Mot. at 4. The Postal Service scheduled drug testing and psychological exams for Ms. Speed, in addition to providing her with forms and documents to complete for a background investigation, anticipating that Ms. Speed could be enrolled in the next academy class, scheduled to begin September 5, 2005. App. at 24 (E-mail from Tammie Moore to Plaintiff's Attorneys (July 21, 2005)). On July 28, 2005, the Postal Service received the results of the psychological examination, which declared her "essentially fit for duty." Pl.'s Resp. to Def.'s Mot. for Summary Judgment ("Pl.'s Opp'n"), Ex. O (Letter from Dr. Neil S. Hibler to Dr. Martin G. Allen and Pamela Dixon (July 28, 2005)). One day later, the Postal Service was notified that Ms. Speed had passed her drug screening. *Id.*, Ex. N (E-mail from Felicita Rodriguez to Tammie Moore, Marvel Hamadeh, and June Swindle (July 29, 2005)).

Nonetheless, Ms. Speed was not enrolled in the academy class commencing in September 2005 in part because of difficulties establishing her physical fitness. The initial physical exam, performed by a physician retained by the Postal Service, revealed concerns about her past shoulder surgeries, specifically whether or not she could lift the requisite 70 pounds. *See* App. at 28 (Report of Dr. Khan). The Postal Service then arranged for Ms. Speed to see an orthopedist

3

for a fresh evaluation of the injury in light of that result. *Id.* at 38-40 (Report of Dr. Randall (Aug. 18, 2005)). The report generated by this visit was then sent to Dr. David R. Carnow, an Associate Medical Officer for the Postal Service, for review. Dr. Carnow pinpointed an inconsistency in the report in a letter to Pamela Dixon, the Acting Manager of Safety & Health Assessment for the Postal Service, noting that Dr. Randall had indicated no weight lifting restriction was needed, but that Ms. Speed's personal physician imposed such restrictions. *Id.* at 41 (Letter from Dr. Carnow to Pamela Dixon (Aug. 23, 2005)). A twenty-pound lifting restriction would have prevented Ms. Speed from meeting the physical requirements of a Postal Inspector and precluded her reinstatement under the terms of the Settlement Agreement. *Id.* at 27 (Medical Examination & Assessment Form) (¶ 1 of Functional Requirements). Throughout September 2005, Ms. Moore worked with Ms. Speed to obtain authorizations for disclosure of medical information "required to clarify [Ms. Speed's physical] fitness to perform the duties of a U.S. Postal Inspector." Pl.'s Opp'n, Ex. F (Revised Medical Releases).[1]

The information gleaned from Ms. Speed's treating physicians (Drs. Raul Sepulveda, James Fogarty, and Michael Dean) regarding her physical condition was neither consistent nor conclusive. Dr. Carnow reiterated his earlier concerns once again in a letter to Ms. Moore on September 21, 2005, noting that "[the doctor] limits [Ms. Speed] to not lift over 20 pounds. He states this goes into the foreseeable future. . . . Then he states that she has no permanent impairment, having just written what appears to be a permanent limitation." Pl.'s Opp'n, Ex. G at 2 (Letter from Dr. Carnow to Moore (Sept. 21, 2005)); *see also* App. at 5-6 (Dr. Fogarty Report (May 19, 2005)) ("[Ms. Speed] will apparently [be] permanently restricted from lifting over 20 pounds."); *id.* at 17-23 (Documentation of 8 Percent Permanent Impairment) (stating that Ms. Speed had already reached "maximum medical improvement"); *id.* at 49 (Report of Dr. Fogarty (June 16, 2005)) ("[Ms. Speed will have a] restriction of no lifting over 20 pounds in the foreseeable future. She has no permanent impairment from this injury."). In a continuing effort to resolve this apparent contradictory indication, Dr. Carnow was asked to inquire further of Ms. Speed's treating physicians. *Id.* at 4 (E-mail from Moore to Dr. Carnow, Pamela Dixon, Lawrence Katz, Robert Mattes, and David Reid (Sept. 30, 2005)).

By early October 2005, Dr. Carnow had communicated with two of Ms. Speed's three treating physicians. Dr. Fogarty had responded to Dr. Carnow's requests for additional information, but informed Dr. Carnow that he had not seen Ms. Speed since June 2005 and would need to conduct a new examination to provide anything further. App. at 52 (E-mail from Dr. Carnow to Moore and Dixon (Oct. 3, 2005)). Dr. Sepulveda indicated that he had not seen Ms. Speed at all in 2005, and likewise had no up-to-date information on her condition. *Id.* at 53 (E-mail from Dr. Carnow to Moore and Dixon (Oct. 4, 2005)). Neither indicated any pending

---

[1]A set of initial medical releases focused specifically upon the condition of Ms. Speed's left shoulder. Pl.'s Opp'n, Ex. E (Original Medical Releases) at 9 ("I notice her release only covers the left shoulder. Will this suffice for our purposes? Or, would it be better to have something more inclusive . . . [,] *i.e.*, the right shoulder too, back, etc.?") (E-mail from Tammie Moore to Dr. David Carnow and Pamela Dixon (Sept. 13. 2005)). The revised releases encompassed fitness as a whole, and not solely the injury for which plaintiff had been collecting worker's compensation.

appointments with Ms. Speed. Dr. Dean apparently did not respond to Dr. Carnow's request in any fashion. *See id.*

On October 14, 2005, Ms. Dixon wrote to Ms. Speed explaining the attempts by the Postal Service to obtain current medical information regarding her physical condition. App. at 54-55 (Letter from Dixon to Speed (Oct. 14, 2005)). In this letter, Ms. Dixon outlined what further action was needed on behalf of Ms. Speed to complete a medical evaluation, specifically requesting that Ms. Speed provide an updated medical status on the pending issues noted by Dr. Carnow. *Id.* After a month had passed, with no response forthcoming, Ms. Dixon sent a second letter to Ms. Speed via Express Mail. *Id.* at 56 (Letter from Dixon to Speed (Nov. 16, 2005)). The November letter indicated that if Ms. Speed did not contact the Postal Service on or before December 2, 2005, with the necessary medical information, her inaction would be regarded as "a lack of interest on [Ms. Speed's] part in continuing to pursue the possibility of [her] reinstatement," which would effectively close the matter. *Id.* Ms. Speed avers that she did not receive either of these letters. Pl.'s Opp'n at 9-10.

Notwithstanding the ostensible finality of the letter sent to Ms. Speed on November 16, the Postal Service unilaterally extended the deadline for response from Ms. Speed via a third letter dated December 6, 2005. App. at 57 (Letter from Dixon to Speed (Dec. 6, 2005)). This extension appears to have been prompted by the fact that the letter of November 16 was returned to the Postal Service after three notices were left at Ms. Speed's residence in an attempt to deliver the letter. The letter of December 6 posited a firm deadline of December 20, 2005, and once again requested Ms. Speed's prompt attention to the updating of her medical information. *Id.*

Ms. Speed responded to the Postal Service on December 14, 2005. App. at 58-59 (Letter from Speed to Dixon (Dec. 14, 2005)). She did not provide medical records with this communication, but she advised the Postal Service that she had been given a twenty-pound lifting restriction by Dr. Dean, with the concurrence of Dr. Fogarty. *Id.* at 58. Ms. Speed referred to the Settlement Agreement and expressed her understanding that it included reinstatement "as a Postal Inspector with modifications due to current medical restrictions." *Id.* Ms. Speed has reiterated this understanding repeatedly during the present litigation. *See, e.g.*, Pl.'s Opp'n at 10 ("[T]he parties were fully aware of the twenty[-]pound restriction before and during mediation . . . . [I] had no idea that this restriction would be the grounds upon which [the Postal Service] unilaterally rescinded the Settlement Agreement."). Ms. Speed stated that she would comply with the Postal Service's request for additional medical information, but only if the Postal Service would provide her the proper forms "with the current 20-pound weight restriction." App. at 59.

On December 23, 2005, Ms. Moore responded to Ms. Speed's letter, noting the lack of additional medical documentation and citing the terms of the Settlement Agreement. App. at 60 (Letter from Moore to Speed (Dec. 23, 2005)) ("As stated in paragraph 6 of the [Agreement,] executed June 4, 2005, you cannot be reinstated to your position without being fully capable. . . . [Y]our statement[] that you are operating under a weight restriction results in no other conclusion than that you are not capable of performing the duties of a Postal Inspector."). The letter ended with a statement that Ms. Speed had failed to pass the Fitness for Duty Examination, which in

5

the view of the Postal Service effectively extinguished the possibility of reinstatement under the terms of the Settlement Agreement. *Id.*

In February 2006, Ms. Speed returned to Dr. Fogarty for consultation about her elbow injury, requesting that the weight restriction be lifted. App. at 61-62 (Report of Dr. Fogarty (Feb. 23, 2006)). Dr. Fogarty found that indeed the restriction could be lifted, stating that Ms. Speed "can return to full duties without restrictions." *Id.* at 61. He signed a U.S. Department of Labor form releasing Ms. Speed to full performance of her usual job. *Id.* at 64 (Work Capacity Evaluation). Consequently, the Department of Labor terminated her worker's compensation benefits, effective April 17, 2006. *Id.* at 65 (Letter from Pam Littleton to Speed (Apr. 17, 2006)).

Ms. Speed pursued reinstatement as a Postal Inspector in 2006, arguing that because her lifting restriction had been removed, she was entitled to reinstatement under the Settlement Agreement. The Postal Service responded to these requests by reiterating its position that reinstatement under the Agreement was a closed matter, because Ms. Speed had not reasonably complied with its terms. App. at 67-68 (Letter from Moore to Plaintiff's Counsel (May 5, 2006)). As an alternative to Ms. Speed's requested reinstatement under the Settlement terms, the Postal Service indicated that it would consider her request pursuant to regulations under the Federal Employee's Compensation Act ("FECA") pertaining to restoration of formerly injured employees. *Id.* Due to Ms. Speed's extended absence from her position, she could not be placed directly back into her former position. Rather, she would have to begin again the process of passing a fitness for duty exam and enrolling in and completing a Postal Inspection Service academy class, including firearms and defensive tactics instruction. *Id.* No guarantee of placement in the Houston office (where plaintiff had formerly served) was given.

On May 15, 2006, the Postal Service offered Ms. Speed a conditional appointment as a Postal Inspector based in New Orleans, Louisiana. App. at 72 (Letter from Dixon to Speed (May 15, 2006)). This appointment was predicated on Ms. Speed's successful completion of a fitness for duty examination and the 12-week Basic Inspector Training Program. *Id.* Ms. Speed successfully completed the requisite mental and physical examinations, and the Postal Service enrolled Ms. Speed in a training program scheduled to begin on July 10, 2006. *See id.* at 76-77 (Letter from Moore to Plaintiff's Counsel (July 21, 2006)). However, Ms. Speed did not arrive on the anticipated date and did not attend any of the training program courses. *Id.* Subsequently, the Postal Service concluded that Ms. Speed "ha[d] no interest in pursuing her re-employment with the [Service]" and that "the matter of [her] reinstatement is hereby effectively closed under any and all terms." *Id.* at 77.

For her part, Ms. Speed objected to the New Orleans appointment on two grounds: first, that the restoration conditions required that she actually pass the academy courses (as contrasted to simply auditing them, as she would have under the Agreement); and second, that she disagreed with the location of her restoration position in New Orleans, rather than Houston where she had expected to be reinstated. *See* Pl.'s Opp'n at 11. Ms. Speed argues that, even though the lifting restriction should have been incorporated into the Agreement at its inception, the removal of her lifting restriction in 2006 permitted her to meet even the more stringent requirements for reinstatement cited by the Postal Service. Under her view, the government has

6

breached the Settlement Agreement by refusing to reinstate her according to its terms after the restriction was lifted. *Id.* at 12.

Following the Postal Service's revocation of the New Orleans appointment, Ms. Speed appealed that decision to the Merit System Protection Board, which ultimately dismissed the case for lack of jurisdiction. First Am. Compl. ¶ 10. That dismissal was affirmed in 2008. *Id.* Based on the government's alleged breach of the Settlement Agreement, Ms. Speed brought suit in Texas state court on July 2, 2009. *Id.* ¶ 11. The case was removed to the United States District Court for the Southern District of Texas, Houston Division, in August of 2009. The federal district court then transferred the case to this court on November 2, 2009.

## STANDARD FOR DECISION

A grant of summary judgment is warranted when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." *Id.* at 250.

The party moving for summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Consequently, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial[,]'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## ANALYSIS

The parties have no disagreement regarding the general outlines of this case. The physical requirements of the Postal Inspector position have been mandated by the Postal Service, and the parties concur that it was not possible for Ms. Speed to meet those requirements while she had a twenty-pound lifting restriction. The two salient points upon which the parties diverge are (1) that Ms. Speed contends that a dispensation for the twenty-pound lifting restriction was agreed during the mediation discussions in 2005, while the government disputes that contention and argues that the plain language of the Settlement Agreement required that Ms. Speed satisfy all prerequisites for the position of Postal Inspector, and (2) the parties disagree as to whether Ms. Speed was afforded a "reasonable opportunity" to fulfill the requirements for reinstatement as a Postal Inspector, as mandated by the Agreement.

A.  *The Terms of the Settlement Agreement*

Ms. Speed frames her claim regarding the twenty-pound lifting limitation in terms of an assumption that the limitation would remain in place upon her return, absent an agreement to the contrary.  *See* Pl.'s Opp'n at 6-8 ("[The Postal Service] was aware of [Ms. Speed's] lifting restriction at the time of the deposition and mediation in or about May 2005. . . .  During the mediation, there was no discussion regarding whether [her] twenty[-]pound restriction had been removed . . . .  [Lifting of the restriction] was not a term included within the agreement.").  The government argues that the terms of the contract explicitly contradict the possibility of a dispensation of the lifting requirement.

Ordinarily, conversations during a negotiation of contractual terms are not appropriate aids for the interpretation of the resulting contract.  Rather, the contractual text stands as written, and its language is given "that meaning that would be derived from the contract by a reasonabl[y] intelligent person acquainted with the contemporaneous circumstances."  *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965).  "When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances, such as prior negotiations . . . for its interpretation."  *Gutz v. United States*, 45 Fed. Cl. 291, 297 (1999); *see also City of Tacoma, Dep't of Pub. Utils. v. United States*, 31 F.3d 1130, 1134 (Fed. Cir. 1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); *Thanet Corp. v. United States*, 591 F.2d 629, 633 (Ct. Cl. 1979) ("Words [in a contract] are to be given their plain and ordinary meanings.").

Whether or not the lifting restriction was expressly or impliedly addressed during the negotiations over the Settlement Agreement in this case is not material because the Agreement itself is fully integrated and is unambiguous on the issue.  *See Community Heating and Plumbing Co. v. Kelso*, 987 F.2d 1575, 1578-79 (Fed. Cir. 1993) ("[C]ontracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to the meaning of their provisions. . . .  A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language.").  Regardless of what was said or not said during the mediation, the Agreement states explicitly that Ms. Speed's reinstatement was contingent upon her qualification to be "fit to fully perform the duties of a Postal Inspector," specifying that Ms. Speed would have a "reasonable opportunity" to meet the requirements "as would any other Basic Inspector Candidate."  Second Am. Compl., Ex. A (Settlement Agreement) ¶ 6.  That language is susceptible only to the interpretation that Ms. Speed would be required to meet the same specifications as would apply to other Basic Inspector Candidates, without any special dispensations.  The precise, unambiguous language of the Agreement renders any evidence of discourse during mediation irrelevant to an interpretation of the Agreement.  Therefore, because the discussion of a twenty-pound lifting restriction during mediation is not material to the disposition of this case, the parties' dispute over it does not preclude summary judgment.  *Liberty Lobby*, 477 U.S. at 248.  The Settlement Agreement by its plain language does not provide for a twenty-pound lifting restriction.

8

## B. *"Reasonable Opportunity"*

The significant question in this case is whether or not Ms. Speed was afforded a "reasonable opportunity" to satisfy the conditions precedent to her reinstatement. Because the Agreement does not set out a specific schedule or framework for her completion of the Postal Inspector prerequisites, this question cannot be answered by reference to a timeline. Rather, this question of "reasonable opportunity" seemingly presents a quintessential issue of fact that would typically be submitted to the finder of fact by way of trial. In this case, however, the evidence presented by both parties overwhelmingly suggests only one answer to that question — *i.e.*, the government afforded Ms. Speed ample opportunities to demonstrate her qualification for reinstatement, but she did not fulfill those requirements in a reasonable way or within a reasonable amount of time.

Ms. Speed couples her contentions respecting reasonableness with her understanding that the twenty-pound restriction was acceptable to the Postal Service. She cites her immediate willingness to submit to mental and physical examinations and drug testing, and to release of medical information from her treating physicians to the Postal Service. *See* Pl.'s Opp'n 8-9. This willingness does not, however, overcome the fact that at the relevant time, Ms. Speed was under a twenty-pound lifting restriction which categorically precluded her from meeting the physical requirements of a Postal Inspector.

When queried by the Postal Service about the lifting restriction, Ms. Speed did not make timely efforts towards having the restriction removed. The physicians to whom she referred the Postal Service had not seen her recently enough to give a current report of her injury or physical condition. The plain language of the Settlement Agreement gave notice to Ms. Speed that she needed to meet all the physical requirements of a Postal Inspector to be eligible for reinstatement, and yet she deferred that process.[2]

Even accepting that Ms. Speed did not receive the first two letters sent by Ms. Dixon of the Postal Service in October and November 2005, receipt of the letter sent on December 6, 2005 (along with the PS Form 2485, detailing the specific physical requirements for a Postal Inspector) would have spurred a reasonable person to action. App. at 57. Instead, Ms. Speed's response merely confirmed to the Postal Service that she persevered with the twenty-pound restriction, demanded reinstatement under those terms, and offered no new information from her treating physicians. App. at 58-59. Nor did Ms. Speed appear to have any plans to attempt to remedy her lifting restriction, as evidenced by the fact that she had no pending follow-up appointments scheduled with any of her doctors. *See* App. at 52-53.

During the intervening eight months between when the Agreement was signed in June 2005 and when Ms. Speed's lifting restriction was removed in February 2006, the Postal Service had no indication that Ms. Speed would ever be able to meet the physical requirements for a

---

[2]Although Ms. Speed may have harbored a misinterpretation of the Agreement, *i.e.*, that the lifting requirements had been waived, during June through October of 2005, she was put on notice of her mistake by the Postal Service's letters sent October 14, November 16, and December 6, 2005.

Postal Inspector. In fact, what information the Postal Service did have at its disposal indicated quite the opposite. *See* App. at 5-6 (Report of Dr. Fogarty (May 19, 2005)) ("[Plaintiff] will apparently [be] permanently restricted from lifting over 20 pounds."); App. at 17-23 (Documentation of 8 Percent Permanent Impairment) (stating that Ms. Speed had reached "maximum medical improvement"); App. at 49 (Report of Dr. Fogarty (June 16, 2005)) ("[Ms. Speed will have a] restriction of no lifting over 20 pounds in the foreseeable future."). Given the state of Ms. Speed's medical records, the Postal Service endeavored to discover the true extent of Ms. Speed's recovery from her injuries. The Postal Service was not, however, required by the Settlement Agreement to provide Ms. Speed with indefinite time in which to meet its eligibility criteria. Nor was it obligated under the Agreement to accept Ms. Speed as a Postal Inspector without having established that she could perform her duties in that position. Indeed, because Ms. Speed appeared not to receive the inquiries sent in October and November 2005, the Postal Service extended the time in which she could have responded. App. at 57 (Letter from Dixon to Speed (Dec. 6, 2005)). In short, eight months of efforts on the part of the Postal Service generated only sporadic and incomplete responses from Ms. Speed. No amount of inferences drawn in favor of Ms. Speed support a finding that she was given less than a reasonable opportunity to comply with the Postal Service's eligibility requirements. The court therefore concludes that Ms. Speed was afforded ample and reasonable opportunity to comply with the Settlement Agreement.

## CONCLUSION

There are no genuine issues of material fact in this case sufficient to preclude summary judgment. The Settlement Agreement was fully integrated and unambiguous as to the terms under which plaintiff would be eligible for reinstatement as a Postal Inspector. She had to be "fit to fully perform the duties" of that position. The Agreement explicitly also provided that plaintiff have a "reasonable opportunity" to meet those requirements. In light of plaintiff's unreasonable delay in pursuing physical eligibility for the position of Postal Inspector, no rational trier of fact could find in her favor. As such, the government is entitled to summary judgment. The clerk will enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge